UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARTHUR MURPHY,

                  Plaintiff,

     -against-

AUTOZONERS, LLC, (d/b/a AUTOZONE AUTO
PARTS STORE 4778), LENWORTH SEWELL,
*individually*, and IRZSAUD JAIKERAN (a/k/a
Mark), *individually,*

                Defendants.

Case No. 22-cv-00911

## DEFENDANTS' RESPONSES TO PLAINTIFF'S COUNTER-STATEMENT OF FACTS

Defendants submit the following Responses to Plaintiff's Counter-Statement of Facts:

### PLAINTIFF'S COUNTER-STATEMENT OF FACTS

### BACKGROUND

1.      Plaintiff began working for AutoZone as a Red Shirt Employee in January of 2020. (Ex. 1, Murphy Decl. ¶ 2).

**Response:**  Undisputed that while he was hired in 2019, Plaintiff did not actually begin work until January of 2020.

2.      Plaintiff was a hard-working and satisfactory employee. (Ex. 1, Murphy Decl. ¶ 3).

**Response**:  Disputed.  Plaintiff's statement is based solely on his personal opinion, which is neither relevant nor admissible.

3.      Plaintiff is African American. (Ex. 1, Murphy Decl. ¶ 4).

**Response**:  Undisputed, but this does not qualify as any "counter statement" given that Plaintiff admitted it was an undisputed statement in his response to Defendants' Undisputed Material Facts. (Rec. Doc. 40-2, PageID #: 475, No. 5).

1

4.      Defendants Lenworth Sewell and Irszaud [sic] Jaikeran ("Individual Defendants") were

Plaintiff's supervisors. (Ex. 1, Murphy Decl. ¶ 5-7).

**Response:**  Disputed to the extent that Plaintiff claims Mr. Sewell was his direct supervisor at any

point in time.  Moreover, Mr. Jaikeran did not become Plaintiff's Store Manager until the Fall of

2020. (Rec. Doc. 40-2, Page ID#: 483, No. 49; Excerpts from Deposition of Lenworth are attached

as Exhibit A, 19:13-18).

5.      Individual Defendant Jaikeran is of Guyanese Descent and is not African American. (Ex.

1, Murphy Decl. ¶ 8).

**Response:**  Undisputed, but this does not constitute a "counter statement" given that Plaintiff

admitted it was an undisputed statement in response to Defendants' Undisputed Material Facts.

(Rec. Doc. 40-2, PageID #: 479, No. 29).

6.      Both Individual Defendants had supervisory authority over Plaintiff, including but not

limited to the power to assign Plaintiff's site location and tasks, to discipline Plaintiff, and

to affect the status of Plaintiff's employment. (Ex. 1, Murphy Decl. ¶ 7; Ex. 3, Sewell Dep.

at 24:13-26:5; Ex. 4, Jaikeran Dep. at 72:14-19; Ex. 7, AZ-00018-19).

**Response:**  Disputed to the extent that Plaintiff claims Mr. Sewell was his direct supervisor at any

point in time.  Moreover, Mr. Jaikeran did not become Plaintiff's Store Manager until the Fall of

2020. (Rec. Doc. 40-2, Page ID#: 483, No. 49; Sewell Depo., 19:13-18). Furthermore, within the

deposition pages cited by Plaintiff, Mr. Sewell testified that he had no authority to fire any

employee or suspend any employee, and did not testify that he had any authority to assign

Plaintiff's site location, tasks, or affect the status of his employment.  Similarly, the testimony

cited from Mr. Jaikeran's deposition does not support Plaintiff's statement. Finally, Ex. 7 does not

2

support Plaintiff's statement other than with respect to Mr. Jaikeran's issuance of discipline to Plaintiff due to Plaintiff's repeated attendance policy violations.

## RACE/NATIONAL ORIGIN DISCRIMINATION

7.      Mr. Jaikeran's brother, niece, and cousin, who are all of Guyanese descent, are also employed by AutoZone, but at different store locations. (Ex. 4, Dep. Jaikeran at 15:8-17:11).

**Response**: Undisputed, but not material.

8.      Mr. Jaikeran regularly staffed employees from his brother's store location at 5284, where his brother was a manager. (Ex. 4, Dep. Jaikeran at 38:22-39:11).

**Response:** Disputed.  Nowhere in the cited testimony did Mr. Jaikeran say he "regularly" staffed his store with employees from his brother's store.  Mr. Jaikeran testified that he would seek to obtain employees from another store on occasion if an employee at his store had an emergency or called to say that he or she could not work a shift. (Rec. Doc. 40-6, 38:1-28).

9.      There were more than ten (10) Guyanese employees working at store location 5284 in 2020. (Ex. 6, Dep. Maraj at 25:13-26:1).

**Response**:  Undisputed that was Mr. Maraj's testimony, but not material given that Plaintiff did not work at Store 5284 in 2020.

10.      Mr. Jaikeran was aware that multiple Guyanese employees were staffed at Plaintiff's and Mr. Jaikeran's store location in 2020. (Ex. 1, Murphy Decl. ¶ 10).

**Response**:  Disputed.  This allegation is based solely on Plaintiff's testimony about what he contends that Mr. Jaikeran knew, which is inadmissible speculation.  In addition, Mr. Jaikeran testified that he had no knowledge that anyone at his store was Guyanese other than himself.  (Rec.

#101614144v2

Doc. 38-6, 74:9-19).  Plaintiff has no admissible evidence to dispute this. (Rec. Doc. 40-2, PageID #: 481-82, No. 41).

11.     In or around July 2020, Mr. Jaikeran stated in sum and substance, "You don't want to work" and "I am only going to hire and promote my people (Guyanese). They work well and we come from the same place." (Ex. 1, Murphy Decl. ¶ 11).

**Response**:  Undisputed that this is what Plaintiff alleged in his Amended Complaint, but this does not constitute a "counter statement" given that Plaintiff admitted it was an undisputed statement in response to Defendants' Undisputed Material Facts. (Rec. Doc. 40-2, Page ID#: 483-84, No. 51).

12.     Plaintiff was extremely offended by Mr. Jaikeran's comments. (Ex. 1, Murphy Decl. ¶ 12).

**Response**:  Undisputed, but not material.

13.     Mr. Jaikeran did not allow Plaintiff to work additional hours and gave additional hours to Guyanese employees because of their national origin. (Ex. 1, Murphy Decl. ¶ 5).

**Response:** Disputed.  The cited "evidence" does not support this statement.

14.     Mr. Jaikeran favored employees of Guyanese descent. (Ex. 1, Murphy Decl. ¶ 40).

**Response**:  Disputed.  The cited "evidence" does not support this statement.  Moreover, as noted in Response to No. 10, Mr. Jaikeran had no knowledge that any employee at Store 4778 was of Guyanese descent other than himself.

15.     Mr. Jaikeran had a poor opinion of Plaintiff due to his race and/or national origin. (Ex. 4, Jaikeran Dep. at 61:12-62:17; Ex. 1, Murphy Decl. ¶ 40).

**Response:** Disputed.  Mr. Jaikeran's testimony contains no support for this statement.  Similarly, Plaintiff's own declaration does not support this statement.

#101614144v2

16.     Mr. Jaikeran scheduled Plaintiff on days he previously stated he was unavailable because of Plaintiff's race and national origin. (Ex. 1, Murphy Decl. ¶ 13-15).

**Response:** Disputed. The cited "evidence" does not support this statement.

17.     In September of 2020, Plaintiff took a medical leave for surgery that was approved by Mr. Jaikeran. (Ex. 4, Dep. Jaikeran at 80:21-81:7).

**Response:** Disputed that Plaintiff took any leave and that any leave was approved by Mr. Jaikeran. The cited testimony does not support Plaintiff's statement, but rather contains Mr. Jaikeran's testimony that he knew Plaintiff took time off for a surgery in September of 2020.

18.     In approximately October of 2020, in response to a customer stating that he wanted to see more diverse employees at AutoZone, Mr. Jaikeran responded in sum and substance "I am going to fire everyone and hire my own people." (Ex. 1, Murphy Decl. ¶ 16-17).

**Response:** Undisputed to the extent that Plaintiff made such allegations in his Amended Complaint; however, this does not constitute a "counter statement" given that Plaintiff admitted it was an undisputed statement in response to Defendants' Undisputed Material Facts. (Rec. Doc. 40-2, Page ID #: 483-84, No. 51).

19.     Shortly thereafter, Plaintiff informed Angel Callejas of Human Resources and District Manager Mr. Sewell to complain of Mr. Jaikeran's discriminatory comments. (Ex. 1, Murphy Decl. ¶ 18; Ex. 6, Dep. Sewell at 118:3-118:8).

**Response:** Disputed.  Plaintiff testified that he never reported any alleged harassment to Mr. Callejas, and statements in his Declaration cannot be used to create a fact issue when they contradict deposition testimony. (Rec. Doc. 38-2, 65:22-66:4, 66:25-67:18).  Additionally, the testimony of Mr. Sewell cited by Plaintiff does not support this statement.

#101614144v2

20.    Mr. Sewell knew that Mr. Jaikeran told the customer "I am going to hire my own people." (Ex. 1, Murphy Decl. ¶ 18).

**Response:**  Disputed.  As Mr. Sewell testified, all he knew was that Plaintiff told him that Mr. Jaikeran wanted to hire his own people as many other Store Managers have said when they are having coverage or staffing issues. (Rec. Doc. 40-5, 118:3-22).

21.    In compliance with AutoZone's antidiscrimination policy, Mr. Sewell was required to take immediate action when instances of prohibited discrimination came to their attention. (Ex. 10, AZ-00123 and AZ-00529).

**Response:** Undisputed that the policy states that, but disputed that Mr. Sewell was aware of any report of discrimination by Plaintiff.   Mr. Sewell testified that Plaintiff never reported discrimination to him. (Rec. Doc. 40-5, 118:3-120:3).

22.    However, no investigation was conducted and no disciplinary action was taken following Plaintiff's October 2020 complaint. (Ex. 3, Sewell Dep. at 58:5-58:11; Ex. 1, Murphy Decl. ¶ 20).

**Response:**  Disputed to the extent that Plaintiff alleges he reported discrimination.  *See* Response to Nos. 20-21.

23.    Instead, after his complaint in late October 2020, Plaintiff began receiving increased numbers of disciplinary points from Defendant Jaikeran and reduced hours. (Ex. 1, Murphy Decl. ¶ 21; Ex. 8, at AZ-00078-80).

**Response**: Disputed. (Rec. Doc. 38-1, Nos. 23-24, 31-38, 40, 57, 58, 62, 63-67, 69-74).

**ATTENDANCE POLICY**

24.    Disciplinary actions to enforce the attendance policy at AutoZone are determined by a points accumulation system. (Ex. 3, Sewell Dep. at 45:3-45:9).

6

#101614144v2

**Response**: Undisputed, but this does not constitute a "counter statement" given that Plaintiff admitted it was an undisputed statement in response to Defendants' Undisputed Material Facts. (Rec. Doc. 40-2, Page ID #: 477, No. 17).

25.    If employees accumulated points in the interim of the COVID pandemic period in 2020, these points were not supposed to count towards potential disciplinary action. (Ex. 3, Sewell Dep. at 83:13-84:18; Ex. 5, Callejas Dep. at 77:1-77:4).

**Response**: Disputed. The cited testimony states that no discipline would be issued at some point during the pandemic, but does not state that any points would be removed or not "count" toward disciplinary action in the future. In fact, Plaintiff has admitted that points were still being accumulated. (Rec. Doc. 40-2, PageID #: 478-79, No. 24).

26.    AutoZone did not instruct its employees to return to the standard AutoZone attendance policy until at least September 27, 2020. (Ex. 14, at AZ-00381).

**Response**:  Disputed. (Rec. Doc. 38-4, ¶ 6).  The evidence cited by Plaintiff does not support this statement.

27.    Accountability for points for the purposes of disciplinary actions resumed in November 2020. (Ex. 3, Sewell Dep. at. 83:13-84:18).

**Response:** Disputed. The cited testimony does not support this statement.

28.    Plaintiff's point accumulation on his attendance report was determined by Mr. Jaikeran. (Ex. 4, Dep. Jaikeran at 48:7-48:25).

**Response**: Disputed. The cited testimony does not support this statement.  The occurrence points depend on whether an employee does or does not give notice, whether the absence or tardy is during the week or weekend, and/or whether a point should or should not be given pursuant to exceptions to the attendance policy.  (Rec. Doc. 40-2, PageID #: 476-77, No. 15).

#101614144v2

**RETALIATION**

29.    On November 6, 2020, Mr. Sewell emailed Mr. Callejas a list of employees who he believed had amassed more than 12 occurrence points. This list included Plaintiff. (Ex. 5, Callejas Dep. at 74:12-19, 75:1-16); Ex. 18, AZ-00759)

**Response:**  Disputed.  Indeed, Plaintiff's Ex. 18 explicitly states that Mr. Callejas emailed Mr. Sewell a list of employees who had amassed more than 12 points and instructed Mr. Sewell to ensure that Serious Violation warnings were given to all employees on that list.

30.    On November 16, 2020, Plaintiff was issued a first written warning written by Mr. Jaikeran and approved by Mr. Sewell incorrectly stating Plaintiff had accumulated 22 points. (Ex. 7 at AZ-00018).

**Response:**  Undisputed other than with respect to Plaintiff's allegation that Plaintiff had not earned 22 points.  (Rec. Doc. 38-2, PageID #: 344).

31.    In fact, between September 27, 2020, and November 6, 2020, Plaintiff had accumulated only eight (8) points. (Ex. 11, AZ-00131).

Response:  Undisputed but not relevant given that the total number of points was 22. (Rec. Doc. 38-2, PageID #: 344).

32.    Approximately November of 2020, Plaintiff again contacted Human Resources to report the continued discriminatory and retaliatory treatment from Mr. Sewell and Mr. Jaikeran. (Ex. 1, Murphy Decl. ¶ 25).

**Response:**  Disputed.  Plaintiff testified that he **never** reported any such conduct to Mr. Callejas. (Rec. Doc. 38-2, 65:22-66:4; 66:25-67:18; *see also* Rec. Doc. 38-5, 63:4-18).  Plaintiff's citation to his own declaration cannot be used to create a genuine issue of material fact when the statement in the declaration contradicts his deposition testimony.

#101614144v2

33.    No investigation was conducted and no disciplinary action was taken following Plaintiff's November 2020 complaint. (Ex. 1, Murphy Decl. ¶ 26).

**Response**:  Disputed.  See Response to No. 32, and the evidence cited therein showing that Plaintiff made no such report of discrimination or retaliation in November of 2020.

34.    Instead, on December 8, 2020, Plaintiff was issued a second written warning written by Mr. Jaikeran and approved by Mr. Sewell, incorrectly stating Plaintiff had accumulated 24 points as of December 8, 2020. (Ex. 7 at AZ-00019).

**Response:**  Undisputed that Plaintiff received further written discipline due to his continued attendance policy violations.  Disputed that there was any inaccurate determination of points. (Rec. Doc. 38-2, PageID #: 344).

35.    In fact, between September 27, 2020, and December 8, 2020, Plaintiff had accumulated eleven (11) points. (Ex. 11, AZ-00131).

**Response**:  Undisputed, but irrelevant given that the total points earned by Plaintiff as of December 8, 2020 was 24.  (Rec. Doc. 38-2, PageID #: 344).

36.    Although Defendants applied their more lenient COVID attendance policy to other employees, they did not apply to it Plaintiff. (Ex. 3, Sewell Dep. at. 83:13-84:18; Ex. 7, AZ-00018 - AZ-00019; Ex, 11, AZ-00131).

**Response**:  Disputed. Neither the cited testimony nor exhibits support this statement.

37.    Approximately December 11, 2020, Plaintiff complained to Angel Callejas of Human Resources Department and Defendant Sewell regarding the discriminatory behavior and hostile work environment at his location. (Ex. 20, Murphy000160-161; Ex. 1, Murphy Decl. ¶ 28).

9

**Response**: Disputed.  Plaintiff testified that he never reported any such conduct to Mr. Callejas. (Rec. Doc. 38-2, 65:22-66:4; 66:25-67:18; *see also* Rec. Doc. 38-5, 63:4-18).  Plaintiff's citation to his own declaration cannot be used to create a genuine issue of material fact when the statement in the declaration contradicts his deposition testimony. Indeed, Plaintiff testified that he had no idea who the number he entered into his contacts as "HR" belonged to. (Excerpts from Deposition of Plaintiff attached as Exhibit B, 67:19-70:18).

38.    Nevertheless, Defendants again chose to ignore the discrimination against Plaintiff, took no action, and the unjustified write-ups and harassment against Plaintiff continued. (Ex. 1, Murphy Decl. ¶ 29-31).

**Response:**  Disputed. Plaintiff never reported discrimination. *See* Response to No. 37.  Moreover, the cited testimony from Plaintiff's Declaration does not support this statement.

39.    In or around December of 2020, Mr. Jaikeran called Plaintiff upwards of fifteen (15) times in one day to ask for Plaintiff's availability after Plaintiff had already provided it. (Ex. 1, Murphy Decl. ¶ 31).

**Response:**  Disputed.  The cited statement from Plaintiff's Declaration does not support this statement.

40.    In or around January of 2021, Plaintiff advised Mr. Jaikeran that he would have an upcoming surgery for his herniated disk and informed Mr. Jaikeran that Plaintiff would be returning to work after he recovered from his surgery in a couple of weeks. (Ex. 1, Murphy Decl. ¶ 32-33).

**Response:** Disputed to the extent Plaintiff is claiming that he told Mr. Jaikeran when the surgery would be.  (*See* Rec. Doc. 40-2, PageID #: 488, No. 75).

10

41.    Plaintiff called Mr. Jaikeran on January 6, 7, and 9, of 2020, to again advise he would be absent due to his surgery and would return once recovered. (Ex. 21, Murphy000163-Murphy000166; Ex. 1, Murphy Decl. ¶ 33).

**Response**:  Disputed. While Plaintiff called Mr. Jaikeran on those dates, he simply said he was not coming to work - - with no explanation - - and then, on January 9, 2020, told Mr. Jaikeran that he had "better things to do" and hung up. (Excerpts from Deposition of Irzsaud Jaikeran are attached as Exhibit C, 86:3-24).

42.    In response to this, Mr. Jaikeran laughed at Plaintiff and said "ok," and hung up abruptly on the Plaintiff. (Ex. 1, Murphy Decl. ¶ 34).

**Response:**  Disputed. *See* Response to No. 41.

43.    Plaintiff believed that his absences would therefore be excused. (Ex. 1, Murphy Decl. ¶ 32-35).

**Response:**  Disputed. *See* Response to No. 41.

44.    Although Mr. Jaikeran approved Plaintiff's medical leave in September of 2020, he did not approve Plaintiff's medical leave in January of 2021 due to Plaintiff's complaints against him. (Ex. 1, Murphy Decl. ¶ 40).

**Response:**  Disputed.  The evidence cited does not support this statement.

45.    On or about January 14 and January 31, 2021, Plaintiff noticed he was unable to log into AutoZone's electronic service system to check for his work and pay information, leading Plaintiff to believe he was terminated. (Ex. 1, Murphy Decl. ¶ 36-37).

**Response:**  Undisputed that this is his testimony.  Plaintiff was separated due to his job abandonment. (Rec. Doc. 38-1, Nos. 79-84).

11

46.    Individual Defendants did not discipline Guyanese employees for the reasons they disciplined Plaintiff. (Ex. 1, Murphy Decl. ¶ 27).

**Response:** Disputed. Plaintiff has no personal knowledge of what discipline other employees received, and cites to no evidence of what discipline any Guyanese employee did or did not receive. Moreover, Plaintiff did not dispute that other employees, who reported that their national origins **were not Guyanese**, also received discipline for attendance policy violations. (Rec. Doc. 40-02, Page ID#: 480-81, Nos. 33-38, Page ID#: 491, No. 88[1]).

47.    Following Plaintiff's termination, Defendants did not contact Plaintiff regarding any subsequent investigation of his claims of discrimination. (Ex. 1, Murphy Decl. ¶ 39).

**Response:**  Disputed because Plaintiff never reported any claims of discrimination during his employment.  *See* Response to Nos. 1, 21, 22, 32, 33, 37 and 38.

48.    Mr. Sewall nor Mr. Callejas conducted a thorough investigation and Plaintiff's termination was almost exclusively reliant on information provided and prepared by Mr. Jaikeran. (Ex. 1, Murphy Decl. ¶ 24; Ex. 4, Callejas Depo. at 103:7-104:7; 104:19-24; Ex. 3, Sewell Dep. at 58:5-58:11).

**Response:**  Disputed. The cited evidence does not support this statement.

49.    Plaintiff complained to his Managers and Human Resources multiple times (Ex. 1, Murphy Decl. ¶18, 25, 28, 32).

**Response:** Disputed because Plaintiff never reported any claims of discrimination during his employment.  See Response to Nos. 1, 21, 22, 32, 33, 37 and 38.

---

[1] Plaintiff claims that Ms. Hamilton would have been aware of the ethnicity of other employees fired for job abandonment, but his cited evidence does not support this statement. (Rec. Doc. 40-2, No. 88).

#101614144v2

50.     Plaintiff's complaints were all in compliance with AutoZone's complaint policy. (Ex. 10,

AZ-00123 and AZ-00529).

**Response**:  Disputed. See Rec. Doc. 40-2, PageID # 476, Nos. 10-12).[2]

51.     Defendants were aware of AutoZone's antidiscrimination policy and of Plaintiff's

discrimination complaints and did not take immediate or proper action. (Ex. 3, Sewell

Dep. at 126:9-19; Ex. 4, Callejas Depo. at 37:9-14; Ex. 1, Murphy Decl. ¶ 32-35).

**Response:**  Undisputed that Defendants were aware of AutoZone's antidiscrimination policy.

Disputed that Plaintiff ever made any reports of discrimination such that any investigation would

have been required.  *See* Response to Nos. 1, 21, 22, 32, 33, 37 and 38.

52.     Defendants terminated Plaintiff from his position due to his race, national origin, and in

retaliation for his multiple complaints of discrimination. (Ex. 1, Murphy Decl. ¶ 40).

**Response**:  Disputed. Plaintiff cites only to his opinion as support for this statement.  His opinion

is not only wholly irrelevant, but absurd given that he had no admissible evidence that anyone

involved in the decision to discharge him knew his race or any report of discrimination he made.

(Rec. Doc. 40-2, Page ID #: 489-91, Nos. 82, 83, 84, 85, 87, 88).

---

[2] In his Response to No. 12, Plaintiff cites to his own declaration to say that he thought that he could report harassment, discrimination or retaliation to his manager. However, that statement cannot be used to contradict his deposition testimony that he knew he must report any such alleged conduct to either the Regional Human Resources Manager or AutoZoner Relations.

Dated:  September 11, 2023

Respectfully submitted,

*/s/ Laurie M. Riley*

Laurie M. Riley, Esq.
Florida Bar No.: 657751
(Admitted *Pro Hac Vice*)
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone:  305-679-5728
Facsimile: 305-679-5816
Email:  lriley@joneswalker.com

And

Tracy E. Kern, Esq.
Louisiana Bar No.: 20246
(Admitted *Pro Hac Vice*)
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, LA 70170
Telephone: 504-582-8134
Facsimile: 504-589-8134

And

Michael D. Billok, Esq.
Bar Roll No. 516448
Bond Schoeneck & King PLLC
268 Broadway, Suite 104
Saratoga Springs, New York 12866
Telephone: (518) 533-3236
Facsimile: (518) 533-3299
Email: mbillok@bsk.com

14

#101614144v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2023, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which will send notification of such filing to all counsel

of record:

Melissa Vo, Esq.
Phillips & Associates,
Attorneys at Law, PLLC
45 Broadway, Suite 430
New York, New York 10006
sclark@tpglaws.com
mvo@tpglaws.com


*/s/ Laurie M. Riley*
Laurie M. Riley

#101614144v2