UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARTHUR MURPHY,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| -against- |  |
| AUTOZONERS, LLC, (d/b/a AUTOZONE AUTO PARTS STORE 4778), LENWORTH SEWELL, *individually*, and IRZSAUD JAIKERAN (a/k/a Mark), *individually,* | 22-cv-00911 |
| Defendants. |  |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

EXHIBIT INDEX ...................................................................................................... v

SUMMARY OF ARGUMENT .................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 5

    *Plaintiff is hired by AutoZone.* ...................................................................... 5

    *Plaintiff is trained by AutoZone on its anti-discrimination and attendance policies and procedures.* ....................................................................... 5

    *The impact of COVID on the enforcement of the attendance policy and Plaintiff's request to work closer to home.* ........................................ 6

    *Plaintiff's hours worked at Store 4778.* ......................................................... 7

    *Plaintiff's attendance problems and discharge for job abandonment.* ......... 8

    *Plaintiff's changing stories about allegedly offensive comments.* .............. 10

ARGUMENT ........................................................................................................... 11

    I.  Summary judgment standard. ....................................................................... 11

    II. Plaintiff's hostile work environment claims cannot survive summary judgment. ..................................................................................... 12

    III. Plaintiff's discrimination claims cannot survive summary judgment. ......... 18

    IV. Plaintiff's retaliation claims cannot survive summary judgment. ............... 21

    V.  Plaintiff's aiding and abetting claims cannot survive summary judgment. . 22

CONCLUSION ........................................................................................................ 22

#101688918v3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Hakeem v. Parkinson*,
    523 Fed. Appx. 19 (2d Cir. 2013) ................................................................................20

*Anderson v. City of New York*,
    No. 06-CV-5726 (RRM) (RER), 2012 U.S. Dist. LEXIS 182520 (E.D.N.Y.
    Dec. 27, 2012) ........................................................................................ 15FN2, 20

*Brown v. Daikin Am., Inc.*,
    756 F.3d 219 (2d Cir. 2014) .......................................................................................20

*Brown v. Northrop Grumman Corp.*,
    No. 12-CV-1488(JS)(GRB), 2014 U.S. Dist. LEXIS 116188 (E.D.N.Y. Aug.
    19, 2014) ...................................................................................................................20

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998) ....................................................................................15, 16, 17

*Butts v. City of New York Dep't of Hous. Preservation & Dev.*,
    990 F.2d 1397 (2d Cir. 1993) .....................................................................................12

*Citroner v. Progressive Cas. Ins. So.*,
    208 F. Supp. 2d 328 (E.D.N.Y. 2002) ....................................................13, 17, 18, 19, 21

*Cruz v. Coach Stores, Inc.*,
    202 F.3d 560 (2d Cir. 2000) .......................................................................................13

*Duplan v. City of New York*,
    888 F.3d 612 (2d Cir. 2018) .......................................................................................21

*Fanelli v. New York*,
    51 F. Supp. 3d 219 (E.D.N.Y. 2014) ..........................................................................20

*Faragher v. City of Boca Raton*,
    524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) .......................................16, 17

*Fleming v. MaxMara United States, Inc.*,
    644 F. Supp. 2d 247 (E.D.N.Y. 2009), *aff'd*, 371 Fed. Appx. 115 (2d Cir.
    2010) .........................................................................................................................14

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000) .......................................................................................19

#101688918v3

*Hindi v. Port Auth. of N.Y. & N.J.*,
    No. 14-CV-8984-LTS, 2019 U.S. Dist. LEXIS 90774 (S.D.N.Y. May 30, 2019) ............................................................................................................16

*Jetter v. Knothe Corp.*,
    324 F.3d 73 (2d Cir. 2003)...............................................................................18

*Johnson v. Riverhead Cent. Sch. Dist.*,
    420 F. Supp. 3d 14 (E.D.N.Y. 2018) ........................................................20, 22

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166 (2d Cir. 2005)..............................................................................21

*Kulak v. City of New York*,
    88 F.3d 63 (2d Cir. 1996)..................................................................................12

*Lamarch v. Tishman Speyer Props., L.P.*,
    No. 03-CV-5246 (CBA), 2006 U.S. Dist. LEXIS 101813 (E.D.N.Y. July 12, 2006) ................................................................................................................18

*Marvelli v. Chaps Cmty. Health Ctr.*,
    193 F. Supp. 2d 636 (E.D.N.Y. 2002) ..............................................15, 21, 22

*Mathirampuzha v. Potter*,
    548 F.3d 70 (2d Cir. 2008)................................................................................12

*Murray v. New York Univ. College of Dentistry*,
    57 F.3d 243 (2d Cir. 1995)................................................................................16

*Patterson v. County of Oneida, N.Y.*,
    375 F.3d 206, 227 (2d. Cir. 2004)....................................................................13

*Ralkin v. New York City Transit Auth.*,
    62 F. Supp. 2d 989 (E.D.N.Y. 1999) ...............................................................12

*Rodriguez v. Westbury Pub. Schs.*,
    No. cv 13-4976, 2015 U.S. Dist. LEXIS 95023 (E.D. N.Y. July 15, 2015) ...................14

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997)..............................................................................12

*Singer v. N.Y. City Health & Hosps. Corp.*,
    No. 18-cv-6356 (BMC), 2020 U.S. Dist. LEXIS 96752 (E.D.N.Y. June 2, 2020) ................................................................................................................13

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003)..............................................................................18

iii

*Thomas v. AutoZone, Inc.*,
No. 17-10126, 2018 U.S. Dist. LEXIS 197491 (E.D. Mich. Nov. 20, 2018)...........15, 16

*Vance v. Ball State Univ.*,
570 U.S. 421 (2013)........................................................................................................15

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)............................................................................................18

*Wiercinski v. Mangia 57, Inc.*,
787 F.3d 106 (2d Cir. 2015)..........................................................................................13

*Williams v. N. Y. City Hous. Auth.*,
458 F.3d 67 (2d Cir. 2006).............................................................................................12

*Woodman v. WWOR-TV, Inc.*,
411 F.3d 69 (2d Cir. 2005).............................................................................................20

*Zheng-Smith v. Nassau Health Care Corp.*,
486 F. Supp. 3d 611 (E.D.N.Y. 2020) .......................................13, 15, 18, 19, 20, 21, 22

**Statutes**

42 U.S.C. §1981 Title VII.......................................................................3, 12, 13, 15, 16, 18

New York City Human Rights Law...................................................................3, 15, 18, 20

New York State Human Rights Law ............................................................................3, 18

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ..................................................................................11

Local Rule 56.1 .....................................................................................................................5

#101688918v3

**EXHIBIT INDEX**

| EXHIBIT A | EXCERPTS FROM THE DEPOSITION OF IRZSAUD JAIKERAN |
|-----------|--------------------------------------------------|
| EXHIBIT B | EXCERPTS FROM THE DEPOSITION OF LENWORTH SEWELL |
| EXHIBIT C | EXCERPTS FROM THE DEPOSITION OF PLAINTIFF |

#101688918v3

Defendants, AutoZoners, LLC (incorrectly named as "d/b/a AUTOZONE AUTO PARTS, STORE 4778"), Lenworth Sewell ("Sewell"), and Irzsaud Jaikeran ("Jaikeran") (collectively "Defendants"), file this memorandum in support of their *Motion for Summary Judgment*.

## SUMMARY OF ARGUMENT

Plaintiff, Arthur Murphy (who is African-American), was hired in November of 2019 by District Manager (and individual Defendant) Sewell (who is also African-American) to work as a Part-Time sales representative at Store 2917. In July of 2020, Plaintiff asked to transfer to a store closer to his home, and Sewell granted this request. Plaintiff began working at Store 4778 in July of 2020. At that time, Jaikeran was employed as a Part Sales Manager ("PSM"). As a PSM, Jaikeran lacked the ability to hire, fire, promote, demote, discipline, set the compensation of and/or schedule any employees. Plaintiff claims that *while Jaikeran was a PSM*, Jaikeran said that: (1) "You don't want to work"; (2) "I am only going to hire and promote my people"; and (3) "I am going to fire everyone and hire my own people." (Rec. Doc. 7, ¶¶ 31, 36). Jaikeran is Guyanese.

Despite the fact that Plaintiff knew he was supposed to immediately report anything he perceived to constitute harassment or discrimination to his Regional Human Resources Manager or AutoZone Relations, he did not do so. In October of 2020, Plaintiff complained to Sewell that Jaikeran, who had become his Store Manager that month, was "harassing" him by constantly calling him on October 26, 2020, to see whether and/or when Plaintiff was going to report for work. Plaintiff was, in fact, absent on October 26, 2020. Because Jaikeran was unaware that Plaintiff would be absent, he had attempted to contact Plaintiff throughout the day to inquire regarding his whereabouts. Plaintiff's failure to show up for his shift was not surprising given that Plaintiff had chronic attendance issues throughout his entire employment. During the early months of the pandemic, AutoZone suspended enforcement of its attendance policy by not issuing written

1

discipline for violations of these policies. However, after AutoZone began to enforce the attendance policy again, Sewell issued written discipline to Plaintiff and to other employees for their violations of the policy. Plaintiff was treated no differently in this respect.

Plaintiff also claims that his hours were reduced due to his race and/or retaliation in the Fall of 2020, and that his hours were given to Guyanese employees. This claim is not only false, but also simply not possible because neither Sewell nor Jaikeran had any knowledge that any other employee at Store 4778 in 2020-2021 was Guyanese besides Jaikeran. Moreover, neither Sewell nor Jaikeran knew of any complaint of discrimination Plaintiff did or did not make during his employment. Additionally, Plaintiff admits that he, himself, severely limited his ability to work for AutoZone in the Fall of 2020 because he said that he could not work before 3:00 p.m. on Mondays through Fridays. In any event, and most importantly, based on the undisputed evidence, Plaintiff's hours were never reduced by AutoZone.

Sometime in early January of 2021, Plaintiff told Jaikeran that he would be having surgery at some point, but did not know when. Plaintiff expected Jaikeran to continue to schedule him for work until the surgery was to actually occur - - which Jaikeran did. Plaintiff last worked at AutoZone on January 4, 2021. Plaintiff claims to have contacted Jaikeran to say that he would not be working his shifts on January 6, 7, and 9; however, **he admits that he made no attempt to contact anyone at AutoZone after January 9** to say that he would not be reporting for his shifts the following week. Plaintiff was deemed to be a "no call/no show" for his shifts on January 11, 12, 13 and 15. In so doing, Plaintiff accumulated 24 points (double the permitted 12 points) just for those missed shifts. Angel Callejas ("Callejas"), Regional Human Resources Manager, recommended to the Regional Manager, whom he believed was then Tammy Hamilton ("Hamilton"), that Plaintiff be fired for his violations of the attendance policy: the job

2

#101688918v3

abandonment (no call/no shows), which also had resulted in Plaintiff exceeding the permitted number of points exponentially.  Hamilton is part African-American.  No Regional Manager nor Callejas knew Plaintiff's race or national origin, nor did they know of any complaint of discrimination/harassment Plaintiff did or did not make.  Plaintiff was discharged from AutoZone due to his attendance policy violations.  Callejas has recommended, and Hamilton has decided to discharge, numerous other individuals for attendance policy violations.  They did not know the race/national origin of those other individuals and did not know of any complaint of discrimination/harassment that the other individuals discharged for job abandonment did or did not make.  **Plaintiff was replaced with an African-American individual**.  Jaikeran and Sewell made the decision to hire the individual who replaced Plaintiff.

After he was discharged for a legitimate, non-discriminatory and non-retaliatory reason - - the company's good faith belief that he had abandoned his job after he did not call or show up for his scheduled shifts in January of 2021 - - Plaintiff filed a lawsuit against AutoZone, his former District Manager (Sewell, who is African-American) and his former Store Manager (Jaikeran, who is Guyanese-American).  Plaintiff asserted that he was fired and subjected to other employment actions due to his race and/or due to retaliation and had also experienced a hostile work environment due to his race and/or national origin, African-American.  These claims are asserted under Title VII, 42 U.S.C. §1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Plaintiff also asserts "aiding and abetting" claims against Sewell and Jaikeran under the NYSHRL and NYCHRL.  Plaintiff cannot establish any of these claims.  With respect to Plaintiff's hostile work environment claim, this must be dismissed because: (1) he failed to exhaust his administrative remedies with respect to his Title VII claim pertaining to a hostile work environment; (2) he failed to establish that any alleged

3

comments were made due to his race/national origin; (3) he cannot establish that he was subjected to severe or pervasive comments based on his race/national origin; and (4) he cannot establish that AutoZone can be held liable for an alleged hostile work environment.

With respect to his discriminatory discharge and other allegedly discriminatory actions, all analyzed under the *McDonnell Douglas* framework, Plaintiff falls woefully short of being able to establish these claims. First and foremost, only his discharge will suffice to constitute an adverse employment action as the discipline (other than discharge) did not lead to any loss of pay, position, or responsibilities. With respect to his discharge claims, he cannot even meet his *prima facie* burden given that: (1) he was not qualified for the position due to his chronic attendance issues; and (2) he has no evidence of disparate treatment and/or any facts to suggest that he was fired due to his race/national origin. Rather, it is undisputed that he was replaced by someone within his very same protected class, African-American. In the alternative, Plaintiff has no evidence that his discharge was a pretext for intentional discrimination. The company had a good faith belief that Plaintiff abandoned his job. Whether the company was correct or not is not relevant. The issue is only whether Plaintiff has any evidence that the company's decision was motivated by his race or national origin. Plaintiff has no such evidence.

Finally, with respect to Plaintiff's retaliation claims, again only his discharge can qualify as a materially adverse employment action to support a retaliation claim. Plaintiff cannot establish his *prima facie* burden on his retaliation claims because no one involved in the decision to fire him due to job abandonment had any knowledge of any protected activity by Plaintiff. Moreover, Plaintiff has no evidence that his discharge was a pretext for retaliation given both the lack of knowledge of any protected activity by him and the fact that numerous others were discharged for job abandonment, and Plaintiff has no evidence that the decision maker knew of any protected

4

#101688918v3

activity by those individuals.  Given his inability to establish any of his primary claims, Plaintiff's

aiding and abetting claims must also be dismissed.

## FACTUAL BACKGROUND[1]

### *Plaintiff is hired by AutoZone.*

AutoZone is a leading retailer of automotive parts and accessories. (SMF ¶ 1).  Plaintiff,

African-American, applied to work at AutoZone Part-Time. (SMF ¶¶ 2, 5).  Sewell, African-

American, was the District Manager who made the decision to hire Plaintiff on November 28,

2019, to work as a Part-Time customer sales representative at Store 2917.  (SMF ¶¶ 3-4).  Plaintiff

was grateful that Sewell made the decision to hire him.  (SMF ¶ 6).  Plaintiff, like all Part-Time

sales employees, was not guaranteed a certain number of hours.  (SMF ¶ 7).  Plaintiff had limited

availability to work at AutoZone, and was only able to work evening shifts.  (SMF ¶ 8).

### *Plaintiff is trained by AutoZone on its anti-discrimination and attendance policies and procedures.*

AutoZone is an equal opportunity employer that strictly prohibits harassment,

discrimination and retaliation.  (SMF ¶ 9).  AutoZone's anti-discrimination policies and procedures

are contained in its Employee Handbook.  (SMF ¶ 10).  Plaintiff received the employee handbook

when he was hired and agreed to comply with all policies and procedures. (SMF ¶ 11).  Plaintiff

knew that if he failed to follow the policies and procedures in the handbook, he could be fired.

(SMF ¶ 21).

If he wanted to report harassment, discrimination, or retaliation, Plaintiff knew that, per the

policy contained in the company's handbook, he needed to make an immediate report to the

---

[1] The facts set forth below are included in Defendants' Local Rule 56.1 Statement (Rec. Doc. 38-1), which will be referred to as "SMF ¶ __."

5

Regional Human Resources Manager or to AutoZoner Relations. (SMF ¶ 12). The Regional Human Resources Manager during Plaintiff's employment was Callejas. (SMF ¶ 13).

In addition to its anti-discrimination policies and procedures, AutoZone also promulgated its attendance policy in writing. (SMF ¶ 14). Employees are advised a week in advance when they are scheduled to work. (SMF ¶ 19). An employee's attendance is tracked using an occurrence system, which involves employees receiving occurrence points for absences and/or tardies depending on a variety of facts, such as whether the employee gives advance notice to the manager on duty, whether the absence/tardy occurs on a weekend, etc. (SMF ¶ 15). Plaintiff knew that to constitute proper notice such that an absence/tardy is considered "excused" and not subject to as many occurrence points as an "unexcused" absence/tardy, an employee must speak with the manager on duty; and a voicemail or text is not considered to be proper notice. (SMF ¶ 16). Plaintiff agreed that if an employee fails to show up for his or her shift, then: (a) that creates problems with both staffing and customer service; and (b) that makes it difficult for AutoZone to run is business. (SMF ¶¶ 18, 20). Employees receive a certain level of discipline depending on how many points they accumulate. (SMF ¶ 17). Plaintiff was also advised, through the company's handbook, that if an employee fails to report for work for two consecutive shifts and fails to notify the manager on duty, the employee is considered to have abandoned his job. (SMF ¶ 22).

### *The impact of COVID on the enforcement of the attendance policy and Plaintiff's request to work closer to home.*

During the beginning of the pandemic, for a few months in 2020, AutoZone temporarily suspended the discipline that would normally be issued when employees violated the attendance policy. (SMF ¶ 23). While attendance points were still being accumulated in 2020 when employees earned them, employees did not receive any written discipline for attendance violations. (SMF ¶ 24).

6

In the summer of 2020, Plaintiff asked to transfer to Store 4778 to be closer to his home, and Sewell granted that request such that Plaintiff was officially transferred to that store in July of 2020.  (SMF ¶¶ 25-27).  In July of 2020, when Plaintiff transferred to Store 4778, Jaikeran, Guyanese, was working at the store as a PSM.  (SMF ¶¶ 28-29).  A PSM has no authority to hire, fire, demote, promote, discipline, or even write schedules for employees.  (SMF ¶ 30).  In July of 2020, AutoZone instructed District Managers and Store Managers that they must resume issuing discipline for violations of the attendance policy.  (SMF ¶ 31).  In July of 2020, and for the entire Summer and part of the Fall of 2020, Store 4778 did not have a Store Manager.  (SMF ¶ 32).

Sewell, as District Manager, issued discipline to employees for their attendance policy violations and, on July 6, 2020, issued discipline to another Part-Time sales employee, Anthony Ramroop ("Ramroop"), African American, for violating the attendance policy. (SMF ¶¶ 33-34). On July 29, 2020, Sewell issued written discipline to Ramroop for continued violations of the attendance policy.  (SMF ¶ 35).  Additionally, that same month, a Full-Time sales employee, Terry James ("James"), African American, was fired due to his violations of the attendance policy.  (SMF ¶¶ 36, 38).  Callejas recommended to the Regional Manager, whom he believed to be Hamilton at the time, that James be fired.  (SMF ¶ 37).  Hamilton is part African-American.  (SMF ¶ 39).

Meanwhile, during the period in which Store 4778 lacked a Store Manager, Plaintiff was absent for more than 25 shifts, but did not receive any written discipline. (SMF ¶ 44).

### *Plaintiff's hours worked at Store 4778.*

While Plaintiff alleges that Jaikeran reduced his hours and gave them to Guyanese employees, the undisputed evidence shows that this allegation is utterly meritless.  (SMF ¶ 40). AutoZone employees are the people who tell AutoZone what their race/national origin is, and that information is transmitted to AutoZone.  (SMF ¶ 42).  With respect to the employees who worked at Store 4778 between July 2020 and January 2021, only Jaikeran identified himself as Guyanese

7

to AutoZone.  (SMF ¶ 43).  Jaikeran is unaware of any employee who was Guyanese and assigned to regularly work at Store 4778 between July 2020 and January of 2021 other than himself.  (SMF ¶ 41).

Moreover, while Plaintiff falsely claims that AutoZone reduced his hours when he worked at Store 4778, it is undisputed that during four weeks in July and August of 2020, Plaintiff was scheduled to work between 37 and 40 hours a week, and failed to work any hours during those weeks.  (SMF ¶ 45).  Plaintiff testified that he had no idea why he failed to report to work the weeks covering July 10-25, 2020.  (SMF ¶ 46).  During another week in August, Plaintiff was scheduled to work 17 hours, but failed to work at all.  (SMF ¶ 47).  Similarly, in September of 2020, Plaintiff was scheduled to work between 20-33 hours per week, and failed to work any shifts during four weeks in September.  (SMF ¶ 48).  In October of 2020, Plaintiff's availability to work became even more limited because he could not work at any time during the week before 3:00 p.m. (SMF ¶ 56).   Jaikeran became the Store Manager of Store 4778 in the Fall of 2020 after receiving training.  (SMF ¶ 49).

### *Plaintiff's attendance problems and discharge for job abandonment.*

Plaintiff was absent for his shift on October 19, 2020.  (SMF ¶ 57).  One week later, on October 26, 2020, Plaintiff failed to report for work and failed to notify any manager on duty.  (SMF ¶ 58).  Sewell reminded Plaintiff of the need to show up for scheduled shifts and the procedure for how to notify the manager if he would not be doing so.  (SMF ¶ 62).  Despite this reminder from Sewell, Plaintiff was absent for his scheduled shift on November 2, 2020.  (SMF ¶ 63).

On November 6, 2020, Sewell emailed Callejas a list of employees who had amassed more than 12 occurrence points, including Plaintiff, and asked for guidance.  (SMF ¶ 64).  Sewell was

8

instructed that written discipline must be issued to those employees appearing on the list of individuals who had accumulated excessive attendance points. (SMF ¶ 65).

On November 16, 2020, even though he already had 22 points, Plaintiff was only issued a first written warning by Sewell for attendance. (SMF ¶ 66). Plaintiff admitted that, no later than November 16, 2020, he knew that the company was going to restart the practice of issuing discipline for attendance policy violations. (SMF ¶ 67). While Plaintiff claims that the November 16, 2020 write up was due to his race/national origin or retaliation (SMF ¶ 68), in the Fall and Winter of 2020, numerous other employees also received written discipline for attendance violations. (SMF ¶ 69). The other individuals who received discipline were of various races and were not known to have made any report of discrimination or harassment. (SMF ¶ 70).

Despite knowing that he would receive further discipline for further attendance policy violations, Plaintiff was again absent for his scheduled shift on December 5, 2020. (SMF ¶ 71). Thus, on December 8, 2020, Plaintiff was issued a second written warning by Sewell due to Plaintiff's continued violations of the attendance policy. (SMF ¶ 72).

Sometime in early January of 2021, Plaintiff told Jaikeran that he was having surgery, but did not know when it was going to be. (SMF ¶ 75). Indeed, as of January 9, 2021, Plaintiff did not know when he would be having surgery. (SMF ¶ 80). Accordingly, Plaintiff expected to continue to be scheduled to work in January of 2021, which he was. (SMF ¶ 76).

The last day Plaintiff actually reported to work at AutoZone was January 4, 2021. (SMF ¶ 77). Plaintiff received points for excused absences on January 6, 7, and 9, 2021. (SMF ¶ 78). Plaintiff never contacted any manager on duty to state that he would be absent after January 9, 2021, even though Plaintiff knew he was, in fact, scheduled to work the following week. (SMF ¶ 79). Plaintiff failed to call in and/or report for his shifts on January 11, 12, 13, and 15; and in so

9

doing, he accumulated 24 points. (SMF ¶ 81). Based on these repeated no calls/no shows, which resulted in the accumulation of 24 points just based on those dates, Callejas recommended to the Regional Manager that Plaintiff be discharged for his violations of the attendance policy. (SMF ¶ 82). Callejas has recommended that many other employees of various races and ethnicities be discharged for attendance policy violations. (SMF ¶ 83).

Given the number of points and the belief that Plaintiff had simply stopped reporting for work, Plaintiff was discharged for job abandonment. (SMF ¶ 84). Plaintiff cannot identify one Part-Time employee who had a worse attendance record than he. (SMF ¶ 61). Plaintiff is not accusing Callejas or any Regional Manager of any alleged discrimination. (SMF ¶ 85). At the time Plaintiff was discharged on or about January 19, 2021, Hamilton, Regional Manager, was unaware of Plaintiff's race/national origin and was also unaware of any supposed complaint of race discrimination/harassment Plaintiff had made. (SMF ¶ 87). Hamilton has decided to discharge hundreds of individuals for job abandonment and did not know their races/national origins. (SMF ¶ 88). Plaintiff was replaced by an African-American male. (SMF ¶ 89).

### *Plaintiff's changing stories about allegedly offensive comments.*

In Plaintiff's Charge of Discrimination ("Charge") filed with the EEOC and New York State Division of Human Rights on February 22, 2021, Plaintiff did not allege that he had been subjected to any offensive statements by Jaikeran concerning his race/national origin. (SMF ¶ 50). Despite this, in his Amended Complaint, Plaintiff alleged that in July of 2020, and in the following months, that Jaikeran, **then a PSM during this timeframe**, said to him that "you don't want to work," "I am only going to hire and promote my people," "I am going to fire everyone and hire my own people," and "these people don't like to work." (SMF ¶ 51). In his deposition testimony, Plaintiff testified that in October of 2020, when Jaikeran was a Store Manager, Jaikeran said "boy, what do you mean you're going to unblock me" in October of 2020 after Plaintiff blocked

10

Jaikeran's phone number such that Jaikeran could no longer attempt to call Plaintiff to report for work or ascertain whether Plaintiff was reporting for his shift. (SMF ¶ 52). Plaintiff admitted that he never alleged he was called "boy" in either his Charge or his Complaint or Amended Complaint. (SMF ¶ 53).

Plaintiff testified that in October of 2020, Plaintiff told Sewell that he was upset that: (a) Jaikeran had contacted him so many times on October 26, 2020, to see if he was going to appear for his shift and, accordingly, he had blocked Jaikeran's calls; and (b) that an unnamed customer told him that Jaikeran said he would fire everyone and hire his own people. (SMF ¶ 59). Plaintiff never personally heard Jaikeran say that he was only going to hire Guyanese people. (SMF ¶ 60).

Plaintiff admitted both that: (1) he never reported any alleged harassment to Callejas and, accordingly; (2) in Plaintiff's Charge, which he knew was being signed under oath, Plaintiff did not mention any alleged report of discrimination to Human Resources. (SMF ¶¶ 54-55).

Jaikeran had no knowledge of any supposed complaint of discrimination Plaintiff did or did not make in the fall or winter of 2020, and was unaware of any Guyanese employees in the store other than himself. (SMF ¶ 73). Similarly, Sewell had no knowledge that any employee at Store 4778 in 2020-2021 was Guyanese other than Jaikeran. (SMF ¶ 74). Plaintiff does not accuse Sewell of making any offensive comments to him based on Plaintiff's race/national origin. (SMF ¶ 86).

**ARGUMENT**

## I.     Summary Judgment Standard.

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). In the discrimination and retaliation context, as

11

elsewhere, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *Ralkin v. New York City Transit Auth.*, 62 F. Supp. 2d 989, 1001 (E.D.N.Y. 1999) (plaintiff must present "more than 'conclusory allegations of discrimination'" to defeat a motion for summary judgment and instead offer 'concrete particulars' to substantiate their claims).

**II.      Plaintiff's hostile work environment claims cannot survive summary judgment.**

Plaintiff's hostile work environment claims fail as a matter of law.  First and foremost, Plaintiff failed to exhaust his administrative remedies regarding his Title VII hostile work environment claim because he did not state in his Charge that he was subjected to a hostile work environment or any offensive statements.  A court may hear only those Title VII claims "that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which are 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citation omitted), superseded by statute on other grounds.  "The central question is whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." *Williams v. N. Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Second Circuit has recognized that "[h]ostile environment claims are different in kind from discrete acts." *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (*quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).  Accordingly, courts hold that allegations in an EEOC charge that relate to discrete instances of

12

alleged discrimination or retaliation are insufficient to exhaust a hostile work environment claim. *Singer v. N.Y. City Health & Hosps. Corp.*, No. 18-cv-6356 (BMC), 2020 U.S. Dist. LEXIS 96752, at *21-22 (E.D.N.Y. June 2, 2020). Because Plaintiff's EEOC Charge involved only allegations of discrete acts of purported discrimination or retaliation, he did not exhaust his administrative remedies on any Title VII hostile work environment claim, and it must be dismissed. *Id.* at *22-23.

Second, **all federal and state law hostile work environment claims** should be dismissed due to Plaintiff's inability to establish these claims. His claims under federal and New York state and city law are coextensive. *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 623 (E.D.N.Y. 2020); *Citroner v. Progressive Cas. Ins. So.*, 208 F. Supp. 2d 328, 339-340 (E.D.N.Y. 2002). To state a *prima facie* claim of a hostile work environment under federal law, a plaintiff must show that the workplace was so permeated with "'discriminatory intimidation, ridicule, and insult,'" and so "'sufficiently severe or pervasive'" that it "'alter[s] the conditions of the victim's employment.'" *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000). Whether conduct is sufficiently "severe or pervasive" to create a hostile work environment is based on the totality of the circumstances, including frequency, severity, whether physically threatening, and "'whether it unreasonably interferes with the employee's work performance.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d. Cir. 2004) (*citing Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21, 23 (1993)); *see also Wiercinski v. Mangia 57, Inc.,* 787 F.3d 106, 113 (2d Cir. 2015) (*citing Harris*, 510 U.S. at 23).

The only person whom Plaintiff accuses of making derogatory comments based on his race/national origin is Jaikeran. No reasonable juror could conclude that the isolated comments allegedly made by Jaikeran were made due to Plaintiff's race/national origin or subjected him to

13

inferior terms and conditions of employment (let alone severe or pervasive conditions).  As a matter of law, the four comments alleged by Plaintiff ("I am going to hire and promote my people;" "I am going to fire everyone and hire my own people;" "these people don't like to work;" and "boy, what do you mean you're going to unblock me") are insufficient on which to base a hostile work environment claim.  Indeed, the first three comments have nothing to do with race or national origin on their face.  Plaintiff is assuming Jaikeran meant he wanted to hire Guyanese people rather than Jaikeran saying he wanted to hire employees of his own choosing instead of those he inherited, like Plaintiff, when Jaikeran became the Store Manager.  Plaintiff's assumptions about what Jaikeran did or not mean by these comments are irrelevant.  *Rodriguez v. Westbury Pub. Schs.*, No. cv 13-4976, 2015 U.S. Dist. LEXIS 95023, *28 (E.D. N.Y. July 15, 2015) (employee's conclusory assumptions that facially neutral comments or conduct was due to her religion or race were insufficient to show that the conduct was actually based on a protected status), *accord*, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

Even taking Plaintiff's self-serving and conclusory speculation into account, such isolated comments by Jaikeran within the thirteen months Plaintiff worked, are not a legally cognizable hostile work environment.  *Fleming v. MaxMara United States, Inc.*, 644 F. Supp. 2d 247, 253-54 (E.D.N.Y. 2009), *aff'd*, 371 Fed. Appx. 115 (2d Cir. 2010) (insufficient evidence of racial hostile work environment despite supervisor's comment that "one day we are going to come in and there's going to be a rope hanging from the ceiling and guess who is going to be hanging from it"); *Rodriguez,* 2015 U.S. Dist. LEXIS 95023, at *26-29 (allegations that a supervisor silenced people from speaking, that a board member threatened the employee's job and made "racially charged comments" in her presence; that another supervisor was angry and hostile to her; and that another supervisor gave the employee involuntary assignments were not due to her race and/or not

14

sufficiently severe or pervasive enough to alter her working conditions and create an abusive environment); *Zheng-Smith,* 486 F. Supp. 3d at 624 (granting summary judgment on hostile work environment claim because five comments by a supervisor over the course of seven months that pertained to asking someone what the employee was saying, mocking the employee, and claiming to not understand employee's accent, were insufficient to rise to the level of an actionable hostile work environment); *Marvelli v. Chaps Cmty. Health Ctr.*, 193 F. Supp. 2d 636, 651-52 (E.D.N.Y. 2002) (three racial comments were not sufficient to alter the conditions of an employee's working environment; thus, summary judgment was appropriate on her racially hostile work environment claim).[2]

Furthermore, Plaintiff cannot establish any basis for holding AutoZone liable. All but the alleged "boy" comment - - pertaining to Plaintiff needing to unblock him - -were allegedly made when Jaikeran was a PSM – which is not a supervisor under the law. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." A tangible employment action is "a significant change in employment status," including: "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Courts have already recognized that a PSM for AutoZone is not a supervisor because a PM is not authorized to hire, fire, demote, or promote Plaintiff or any other employee. See *Thomas v.*

---

[2] Even using the NYCHRL standard, whether the alleged behavior amounted to more than "petty slights and trivial inconveniences," summary judgment would still be warranted given the isolated nature of these alleged comments. *Anderson v. City of New York*, No. 06-CV-5726 (RRM) (RER), 2012 U.S. Dist. LEXIS 182520, *24-25 (E.D.N.Y. Dec. 27, 2012).

15

*AutoZone, Inc.*, No. 17-10126, 2018 U.S. Dist. LEXIS 197491, *9 (E.D. Mich. Nov. 20, 2018) citing *Equal Emp't Opportunity Comm'n v. AutoZone, Inc.*, 692 F. App'x 280, 283 (6th Cir. 2017) (holding that AutoZone did not authorize Townsel, the store manager, to take tangible employment action against the employees, and explaining that Townsel's "ability to direct the victims' work at the store and his title as store manager [did] not make him the victims' supervisor for purposes of Title VII.") (internal quotations omitted). Thus, to hold AutoZone liable for a hostile work environment, Plaintiff would have to establish that AutoZone knew of a racially hostile environment and failed to act. *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995). There is no such evidence here. At best, Plaintiff claims that he told Sewell that Jaikeran said he wanted to hire his own people. Again, that is not a racial remark, let alone a report of racial harassment. Moreover, Plaintiff knew that he was supposed to report any racial harassment to the Regional Human Resources Manager, not Sewell. Thus, Plaintiff cannot establish any liability on AutoZone's part with respect to his hostile work environment claim. *Hindi v. Port Auth. of N.Y. & N.J.*, No. 14-CV-8984-LTS, 2019 U.S. Dist. LEXIS 90774, at *23-25 (S.D.N.Y. May 30, 2019) (granting summary judgment on employee's hostile work environment claim because he had no evidence that his employer knew of any national origin or religious harassment and failed to act).

However, even if Jaikeran could be deemed to be a supervisor, which AutoZone denies, then for Plaintiff's Title VII claim, AutoZone can establish the affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) and *Burlington,* 524 U.S. at 765. An employer:

> is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending

16

employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Citroner,* 208 F. Supp. 2d at 341, *accord, Faragher,* 524 U.S. at 807-08; *Burlington,* 524 U.S. at 765.

In this case, AutoZone is entitled to rely on *Faragher* and *Ellerth* because, even though Plaintiff was terminated, this termination was not the culmination of any harassment against him. *Citrone*r, 208 F. Supp. 2d at 341. "The *Faragher/Ellerth* defense is available to the employer despite the fact that the employee had been discharged, where the alleged hostile work environment did not culminate in employee's discharge, but the employee was instead fired for another reason." *Id.* (quotation and citation is omitted).

Plaintiff knew that AutoZone had an anti-harassment policy and procedure and that he was supposed to report alleged harassment to the Regional Human Resources Manager. He did not do so. Accordingly, based on the facts, and as a matter of law, AutoZone can establish that it exercised reasonable care to prevent and promptly correct harassing behavior and that Plaintiff unreasonably failed to take advantage of these preventive and corrective opportunities. *Citroner*, 208 F. Supp. 2d at 341-42 (granting summary judgment on harassment claim because it was undisputed that the

17

employer exercised reasonable care to prevent and correct any harassment by promulgating an anti-harassment policy and complaint procedure and that the plaintiff never utilized the procedure to report harassment); *Lamarch v. Tishman Speyer Props., L.P.*, No. 03-CV-5246 (CBA), 2006 U.S. Dist. LEXIS 101813, *55-56 (E.D.N.Y. July 12, 2006) (same).  For all of the above reasons, Plaintiff's hostile work environment claims must be dismissed.

**III.     Plaintiff's discrimination claims cannot survive summary judgment.**

Claims for race and national origin discrimination under Title VII, the NYSHRL the NYCHRL, and 42 U.S.C. §1981 are all analyzed using the *McDonnell Douglas* burden-shifting framework. *Zheng-Smith,* 486 F. Supp. 3d at 620-21 (E.D. N.Y. 2020); *Citroner,* 208 F. Supp. 2d at 342. To establish *a prima facie* race discrimination claim, Plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Zheng-Smith*, 486 F. Supp. 3d at 621.  *See* also, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  Once a plaintiff makes a *prima facie* showing, "discriminatory animus is presumed and the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the employment decision.  If defendant does so, the plaintiff must show that the articulated non-discriminatory reason for defendant's action is in fact a pretext for discrimination." *Jetter v. Knothe Corp.*, 324 F.3d 73, 75-76 (2d Cir. 2003).  To successfully rebut a defendant's non-discriminatory rationale, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  A reason will not be proved to be a pretext for discrimination unless it is

18

shown both that the reason was false, and that discrimination was the real reason. *Citroner,* 208 F. Supp. 2d at 328.

First, given Plaintiff's chronic attendance issues, Plaintiff cannot establish that he was qualified for his position. This is particularly true given that Plaintiff admitted that when employees were absent, that hurt both customer service and other employees. (SMF ¶ 18). *See Zheng-Smith*, 486 F. Supp. 3d at 621-22 (employee failed to show that she satisfactorily performed her job duties given her poor evaluations and performance and failure to improve even after she received warnings).

Second, other than his separation from the company, Plaintiff cannot establish that he was subjected to any adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ*., 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id*., at 640 (citation and quotation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* As noted above, Plaintiff's hours were not reduced, let alone reduced by AutoZone. Moreover, any discipline he received did not lead to a loss of employment, position, or decrease in pay or benefits. Thus, the discipline would not constitute an adverse employment action.

Finally, with respect to the fourth element of his *prima facie* claims, Plaintiff has no evidence pertaining to any discriminatory intent concerning his termination. An inference of discrimination may be drawn by a showing by the plaintiff that he suffered disparate treatment in

19

comparison to others similarly situated. *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 229 (2d Cir. 2014); *Fanelli v. New York*, 51 F. Supp. 3d 219, *231 (E.D.N.Y. 2014), *citing Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). To establish disparate treatment, there must be a reasonably close resemblance of the facts and circumstances of a plaintiff's and a comparator's cases, such that the comparator "must be similarly situated to the plaintiff in all material respects." *Abdul-Hakeem v. Parkinson*, 523 Fed. Appx. 19, 21 (2d Cir. 2013). Plaintiff cannot identify anyone with the same number of attendance points and/or anyone who was believed to have abandoned his job and was allowed to remain employed. Thus, Plaintiff cannot establish the fourth element of his *prima facie* claim. *Johnson v. Riverhead Cent. Sch. Dist.*, 420 F. Supp. 3d 14, 23-24 (E.D.N.Y. 2018) (granting summary judgment on discrimination claim given that employee had no evidence individuals outside of his protected class received more favorable treatment than he); *Zheng-Smith*, 486 F. Supp. 3d at 622 (same); *Anderson,* 2012 U.S. Dist. LEXIS 182520, at *23-24 (granting summary judgment on NYCHRL discrimination claim because the employee had no evidence that he was treated differently from individuals outside of his protected class).

Additionally, Plaintiff was not replaced by someone outside of his protected class. (SMF ¶ 89). This, too, negates any inference that Plaintiff was discharged due to his race/national origin. *Brown v. Northrop Grumman Corp.*, No. 12-CV-1488(JS)(GRB), 2014 U.S. Dist. LEXIS 116188, *18-20 (E.D.N.Y. Aug. 19, 2014) (granting summary judgment on employee's discrimination claim because she failed to establish that sew was replaced by someone outside of her protected class). Finally, there can be no inference of discrimination given that Plaintiff has no evidence that the decision maker even knew what his race or national origin were. That is absolutely fatal to Plaintiff's ability to establish a *prima facie* discrimination claim. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 80-83 (2d Cir. 2005) (a defendant's discriminatory intent "cannot be inferred," thus,

20

there must be evidence that the decision maker knew of the protected class at the time of the adverse employment action in order to support any inference of a discriminatory intent).

Even if Plaintiff was able to establish a *prima facie* discriminatory discharge claim, he has no evidence that his discharge was a pretext for intentional discrimination.   Based on the attendance report, AutoZone had a good faith belief that Plaintiff violated the attendance policy. Whether the company was correct or not is irrelevant.   The issue is whether Plaintiff has any evidence that his separation for job abandonment was motivated by his race or national origin to fire him.   Plaintiff lacks such evidence.   Indeed, he does not accuse the individuals who recommended and decided to fire him (the Human Resources Manager and Regional Manager) of any discrimination.   (SMF ¶ 85).   Because he lacks such evidence, his discharge claim should be dismissed.  *Zheng-Smith*, 486 F. Supp. 3d at 623 (employee could not establish that her discharge was a pretext for discrimination given that she did not allege that all individuals involved in the decision to terminate her engaged in any discriminatory conduct); *Citroner*, 208 F. Supp. 2d at 343; *Marvelli,* 193 F. Supp. 2d at 658.

**IV.   Plaintiff's retaliation claims cannot survive summary judgment.**

To establish a *prima facie* retaliation claim under federal, state, or local law, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the decision maker knew of the protected activity; (3) he experienced an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *Duplan v. City of New York,* 888 F.3d 612 (2d Cir. 2018); *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 173 (2d Cir. 2005); *Citroner,* 208 F. Supp. 2d at 342.

It is undisputed that no individual involved in the decision to consider Plaintiff separated due to job abandonment had any knowledge that Plaintiff reported any harassment or

21

discrimination.  Given that Plaintiff has no evidence that the decision maker was aware of any protected activity, he cannot establish the causal connection necessary to withstand summary judgment on his retaliation claims.  *Johnson,* 420 F. Supp. 3d at 26 (decision maker's lack of knowledge of employee's protected activity meant the employee could not establish his prima facie retaliation claims), *accord Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11 Civ. 5528, 2014 U.S. Dist. LEXIS 134789, *23-24 (E.D.N.Y. Sept. 24, 2014).

Moreover, for the same reasons Plaintiff could not establish his discharge was a pretext for race discrimination, he cannot do so with respect to his retaliation claim.  *Marvelli v. Chaps Cmty. Health Ctr*., 193 F. Supp. 2d 636, *658 (E.D.N.Y. 2002) (granting summary judgment on retaliation claim because employees had no evidence that the employer treated others in similar circumstances more favorably than they were).

**V.      Plaintiff's aiding and abetting claims cannot survive summary judgment.**

Because Plaintiff cannot establish any hostile work environment, discrimination, or retaliation claim against AutoZone, he cannot maintain any "aiding and abetting" claims against the Individual Defendants.  Thus, those claims must be dismissed. *Zheng-Smith*, 486 F. Supp. 3d at 625.

**CONCLUSION**

For the reasons stated above, Defendants are entitled to summary judgment on each of the eleven claims for relief that Murphy asserted in his *First Amended Complaint*.

22

#101688918v3

Dated:  November 17, 2023

Respectfully submitted,

*/s/ Laurie M. Riley*
Laurie M. Riley, Esq. (Florida Bar No.: 657751)
(Admitted *Pro Hac Vice)*
Jones Walker LLP
201 South Biscayne Boulevard, Suite 3000
Miami, FL 33131
Telephone: 305-679-5728
Facsimile: 305-679-5816
Email: lriley@joneswalker.com

And

Tracy E. Kern, Esq. (Louisiana Bar No.: 20246)
(Admitted *Pro Hac Vice)*
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, LA 70170
Telephone: 504-582-8134
Facsimile: 504-589-8134

And

Jessica Moller (JM0930)
BOND SCHOENECK & KING PLLC
1010 Franklin Avenue, Suite 200
Garden City, New York 11530
Phone: (516) 267-6332
Facsimile:  (516) 267-6301
E-Mail:  JMoller@bsk.com
*Attorneys for the Defendants*

23

#101688918v3

**CERTIFICATE OF SERVICE**

I hereby certify that this *Memorandum in Support of Motion for Summary Judgment* was served on counsel for Plaintiff, Arthur Murphy, on November 17, 2023, by email.

Melissa Vo, Esq.
Phillips & Associates,
Attorneys at Law, PLLC
45 Broadway, Suite 430
New York, New York 10006
mvo@tpglaws.com

> */s/ Laurie M. Riley*
> Laurie M. Riley

#101688918v3