UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ARTHUR MURPHY,

                     Plaintiff,                                    **MEMORANDUM AND ORDER**
                                                                   1:22-cv-00911 (OEM) (VMS)

          -against-


AUTOZONE, LLC (d/b/a/ AUTOZONE AUTO
PARTS, STORE 4778), LENWORTH SEWELL,
*individually*, and IRZAUD JAIKERAN (a/k/a Mark),
*individually*

                     Defendants.
----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

On February 18, 2022, plaintiff Arthur Murphy ("Plaintiff") filed this employment

discrimination action against AutoZone, LLC ("AutoZone"), Lenworth Sewell ("Sewell"), and

Irzaud Jaikeran ("Jaikeran") (collectively, "Defendants"), asserting claims of hostile work

environment, discrimination, and retaliation in violation of Title VII of the Civil Right Act of 1964

("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the

New York City Human Rights Law ("NYCHRL"). Plaintiff also asserts aiding and abetting claims

against Jaikeran and Sewell in violation of the NYSHRL and NYCHRL. Before the Court is

Defendants' Motion for Summary Judgment (the "Motion"), ECF 52, filed on January 17, 2024.

For the reasons stated below, Defendants' Motion is granted.

## BACKGROUND

On November 28, 2019, Plaintiff, who is African-American, was hired as a part-time

customer sales representative at AutoZone Store 2917. Plaintiff's Response to Defendants' Rule

56.1 Statement of Undisputed Material Facts and Revised Counter-Statement of Material Facts

("Plaintiff's 56.1 Stmt and Revised Counter-Stmt"), ECF 45, ¶3. The decision to hire Plaintiff

was made by District Manager Sewell, who is also African-American. *Id.*, ¶¶3–4. AutoZone has an attendance policy that assigns so-called occurrence points for "excused" and "unexcused" absences and tardies, based on whether an employee notified a manager in advance of their absence or tardiness. *Id.*, ¶16. An employee is considered to have abandoned their job if they do not report to work for two consecutive shifts without notifying a manager. *Id.*, ¶22.

In June 2020, Plaintiff transferred to AutoZone Store 4778, which was closer to his home, after Defendant Sewell approved the transfer. *Id.*, ¶¶25–27. At that time, Plaintiff and Defendant Jaikeran, who is Guyanese, held equivalent positions. Initially, Jaikeran was a Parts Sales Manager ("PSM") with no authority to hire, fire, demote, promote, discipline, or write schedules for employees. *Id.*, ¶30. In August 2020, Jaikeran was promoted to Store Manager, which placed him in a supervisory role over Plaintiff. *Id.*, ¶49.

During the Covid-19 pandemic, AutoZone temporarily suspended disciplinary actions related to attendance, although occurrence points were still recorded. *Id.*, ¶23–24. The Parties proffer different dates on which AutoZone instructed its employees to return to the standard AutoZone attendance policy, with Defendants asserting that the temporary suspension ended "[i]n July of 2020" and Plaintiff asserting that "AutoZone did not instruct its employees to return to he standard AutoZone attendance policy until at least September 27, 2020," pointing to an internal AutoZone memorandum referencing the later date. *Id*, ¶31. By November 16, 2020, Plaintiff was informed that the company would "restart the practice of issuing discipline for attendance policy violations." *Id.*, ¶67. In July and August 2020, Plaintiff was scheduled to work between thirty-seven to forty hours per week but did not work any hours during those weeks. *Id.*, Ex. 8, ECF 45-8 at AZ-0060–69. At his deposition, Plaintiff stated that he was "not exactly sure" why he failed to report to work during those weeks, recounting that he "might have had scheduled time off. I'm

not sure but I definitely wasn't stating that I had COVID." Plaintiff's Deposition Transcript ("Pl.'s Dep."), ECF 45-2 at 183:5-16. Contemporaneous AutoZone records suggest that Plaintiff told AutoZone he left work after reporting "headaches" on July 10, 2020, responded only sporadically to managements' attempts to contact him, and on July 23, 2020 "mentioned that he wasn't aware of his scheduled days." Plaintiff's 56.1 Stmt and Revised Counter-Stmt, Ex. 17, ECF 45-17 at AZ-00747–752.

Notwithstanding the more lenient pandemic attendance policy that was in place, in July 2020, other AutoZone employees, namely Anthony Ramroop and Terry James, were disciplined for their attendance policy violations. Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶¶33, 36. Plaintiff received his first written warning for his attendance policy violations on November 16, 2020, after he accumulated eight attendance points between September 27 and November 16, 2020. *Id.*, ¶66.

Plaintiff alleges that "in July of 2020, and in the following months," Jaikeran told a customer, "I am going to fire everyone and hire my own people." *Id.*, ¶51. Plaintiff asserts that he did not personally hear the alleged statement but was told about it by the customer. *Id.*, ¶59. Plaintiff also alleges that during the same time period, Jaikeran pointed to him and said, "You don't want to work," and "I am only going to hire and promote my people. They work well and we come from the same place." Defendant's Response to Plaintiff's Counter-Statement of Facts, ECF 52-2, ¶4.

Furthermore, Plaintiff alleges that, as Store Manager, Jaikeran reduced his hours and gave them to Guyanese employees. Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶40. However, Jaikeran testified that he was unaware of any Guyanese employees who worked at Store 4778 between July 2020 and January 2021 other than himself. *Id.*, ¶41. Mr. Jaikeran is the only

3

employee who self-reported himself in AutoZone's internal system as of Guyanese ethnicity.  *Id*., ¶43.

AutoZone records also indicate that Plaintiff's hours were not reduced overall during the period in which Jaikeran was Plaintiff's supervisor.  During the time period when Jaikeran was not Plaintiff's supervisor – from November 2019 through July 2020 – Plaintiff's time records reflect that he worked an average of about fourteen hours per week.  *Id*., Ex. 8, ECF 45-8 at AZ-00028–86.  After Jaikeran became Plaintiff's supervisor – from August 2020 through January 2021 – Plaintiff's time records reflect that he still worked an average of about fourteen hours per week during the weeks Plaintiff was available for work.  *Id.*

In September 2020, Plaintiff was granted four weeks of medical leave due to surgery.  Jaikeran's Deposition Transcript ("Jaikeran's Dep."), ECF 40-6 at 80:20–25.  In October 2020, Plaintiff's availability became limited as he could only work evening shifts during the week to accommodate his school schedule.  Pl.'s Dep., ECF 38-2 at 107:7–18.  On October 19, 2020, Plaintiff had an excused absence.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶57.  Plaintiff's AutoZone attendance report reflects that on October 26, 2020, Plaintiff did not report for work and did not notify any manager.  *Id*., Ex. 11 at AZ-00131.  Jaikeran attempted multiple times to contact Plaintiff by phone on that date to confirm if he would appear for his shift.  Pl.'s Dep., ECF 38-2 at 144:11–147:4.  Plaintiff blocked Jaikeran's calls.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶59.

Sometime later, in October 2020, Plaintiff told Sewell that he was upset Jaikeran had contacted him so many times on October 26.  *Id*.  Plaintiff also told Sewell what he heard from the customer – that Jaikeran said he would "fire everyone and hire [his] own people."  *Id.*  Sewell testified to that conversation between he and Plaintiff, claiming that he interpreted Jaikeran's

statement concerning hiring his own people to mean *people that Jaikeran chose to hire*, rather than employees he inherited, which Sewell testified is something he has been told by many other Store Managers when they were having coverage or staffing issues.  Sewell's Deposition Transcript ("Sewell's Dep."), ECF 40-5 at 118:12–22.

Between November 1 and November 21, 2020, Plaintiff was only scheduled to work three four-hour shifts.  *Id.*, Ex. 8, ECF 45-8 at AZ-00078–79.  On November 2, 2020, Plaintiff had another excused absence.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶63.  On November 6, 2020, Sewell emailed Regional Human Resources Manager Angel Callejas ("Callejas") a list of employees who had amassed more than twelve occurrence points, including Plaintiff, seeking guidance.  ECF 45, ¶64.  On December 5, 2020, Plaintiff had another excused absence.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶71.  On December 8, 2020, Plaintiff was issued a second written attendance policy violation warning by Sewell.  *Id.*, ¶72.  Plaintiff testified that Sewell never made any derogatory comments about Plaintiff's race or national origin.  Pl.'s Dep., ECF 45-2 at 140:15–22.

In the fall and winter of 2020, other employees received written discipline for attendance violations.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶69.  Callejas testified that those other individuals were of various races and were not known to have made any report of discrimination or harassment.  *Id.*, ¶70.

The last day Plaintiff reported to work was January 4, 2021.  *Id.*, ¶77.  He received points for excused absences on January 6, 7, and 9, 2021.  *Id.*, ¶78.  On January 9, 2021, Plaintiff informed Jaikeran via telephone that he was scheduled to have surgery in the coming weeks but did not specify the date.  *Id.*, ¶75.  Plaintiff expected to continue being scheduled to work in January 2021 and was aware of his work schedule for the week following January 9.  *Id.*, ¶76; Pl.'s Dep., ECF

45-2 at 217:16–18.  However, Plaintiff alleges that he had to self-quarantine to prevent contracting Covid-19 prior to his surgery.  *Id*. at 211:24–212:14.  Plaintiff did not notify any manager that he would be absent after January 9, 2021.  *Id.* at 216:24–217:4.  An AutoZone attendance report reflects that Plaintiff did not report for his shifts on January 11, 12, 13, and 15, 2021, resulting in the accumulation of twenty-four occurrence points.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, Ex. 11 at AZ-00131.

Based on Plaintiff's repeated no-shows, Callejas recommended to Regional Manager Tammy Hamilton ("Hamilton") that Plaintiff be discharged for violating the attendance policy.  Callejas' Dep., ECF 45-5 at 103:7–104:7.  Hamilton, who is "part African American," was not aware of Plaintiff's race, national origin, or any discrimination complaints at the time of the decision.  Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶¶39, 87.  Hamilton declared that historically she has made hundreds of similar decisions regarding other employees without knowledge of their races or national origins.  Hamilton Declaration ("Hamilton Decl."), ECF 38-4, ¶9.  Plaintiff was discharged on or about January 19, 2021.  *Id*., ¶87.

On February 22, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging discrimination based on race and national origin.  Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Ex. A, ECF 53-2 at 1–2.

## STANDARD OF REVIEW

"A movant is entitled to summary judgment only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Arkorful v. N.Y.C. Dep't of Educ.*, No. 18-CV-3455 (NG) (ST), 2024 WL 298999, at *6 (E.D.N.Y. Jan. 24, 2024) (quoting Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Summary judgment is

appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020)) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Id.*

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp.,* 477 U.S. at 323). "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Arkorful v. N.Y.C.*, 2024 WL 298999 at *7 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "While circumstantial evidence may be sufficient to raise a genuine issue of material fact precluding the grant of summary judgment, a party cannot survive a motion for summary judgment by relying on mere speculation or conjecture as to the true nature of the facts." *Id.* (internal quotation marks and citations omitted).

"In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the nonmovant." *Sylla v. N.Y. City Dep't of Educ.*, 664 F. Supp. 3d 311, 322 (E.D.N.Y. 2023) (citing *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010)). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

"In cases that involve claims of discrimination or retaliation, courts must use 'an extra measure of caution' in deciding whether to grant summary judgment 'because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.'" *Wheeler v. Praxair Surface Techs., Inc.*, No. 21 CIV. 1165 (PAE), 2023 WL 6282903, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)). "But 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases.'" *Id.* (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). "Thus, even in such a case, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and courts may grant summary judgment against discrimination claims in cases lacking genuine issues of material fact." *Id.* (internal quotations and citations omitted).

## DISCUSSION

Plaintiff brings claims under Title VII, § 1981, the NYSHRL, and the NYCHRL for employment discrimination on the basis of race or national origin. Plaintiff's claims are for hostile work environment, discrimination, and retaliation. Plaintiff also brings state law aiding and abetting claims against Defendants Jaikeran and Sewell pursuant to the NYSHRL and NYCHRL. Plaintiff's claims derive from incidents that occurred from October 2020 through January 2021. Defendants move for summary judgment on all of Plaintiff's claims, arguing that that there are no disputed issues of fact sufficient for Plaintiff to proceed to a trial by a factfinder.

**A. Plaintiff's Title VII and NYSHRL Claims**

    **1. Hostile Work Environment**

        *a.    Claim Exhaustion*

First, Defendants argue that because Plaintiff did not allege a hostile work environment claim in his EEOC charge, Plaintiff failed to exhaust his administrative remedies concerning his hostile work environment claims. However, the Court's jurisdiction is proper not only concerning issues specifically raised in Plaintiff's EEOC charge, but also those claims "reasonably related" to the charges alleged therein. *Moore v. Dejoy*, 600 F. Supp. 3d 332, 343 (S.D.N.Y. 2022) ("An exception to the exhaustion requirement may be made for claims not formally asserted before the agency if they are 'reasonably related' to those properly filed with the agency.") (citing *Williams v. New York City Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006)). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the [EEOC] investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). "This 'fact-intensive' inquiry focuses on whether 'the substance of the charge' gave the agency 'adequate notice to investigate discrimination on' the unalleged but reasonably related charge." *Sylla*, 664 F. Supp. 3d at 323 (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 76–77 (2d Cir. 2008) ("The central question is whether the complaint filed with the EEO gave the agency adequate notice to investigate discrimination on both bases.")). "Claims based on 'a wholly different type of discrimination than initially asserted in the [EEO] charge' will not generally be permitted." *Atencio v. U.S. Postal Serv.*, No. 1:14-CV-7929-GHW, 2015 WL 7308664, at *6 (S.D.N.Y. Nov. 19, 2015) (quoting *Best v. Duane Reade Drugs*, No. 14-cv-2648 (CM), 2014 WL 5810105, at *4 (S.D.N.Y. Nov. 6, 2014).

Here, Plaintiff expressly alleged in his EEOC charge that he "was discriminated against based on my race (African American), National Origin (American) with respect to harassment, reduced work hours, write ups with threats of termination and being the only one written up for a time switch and being threatened with termination, and discharged in retaliation." Ex. A, ECF 53–2 at 2.  Plaintiff described in sufficient detail the alleged harassment he faced based on his race or national origin at the hands of Defendant Jaikeran, claiming his "work hours were reduced to 4 hours per week by Mike and was told that the district manager also approved my hour reductions but was told that they were giving the hours to the Guyanese workers…I was also repeatedly denied pandemic time off for the times I had to quarantine but was made aware that they allowed a Guyanese individual named Duncan pandemic time off…Mike also allowed Guyanese workers paid lunches as well as allowed the ones that did clock out to clock back in earlier from lunch but made se the non-Guyanese workers clocked out." *Id.* at 1–2.

Because Plaintiff's claim that he was subjected to a hostile work environment is also based on his race and national origin, the Court finds that it is reasonably related to his charge of discrimination insofar as an investigation of his race and national origin-based discrimination claim would require inquiry into the same facts necessary to bring a hostile work environment claim based on race or national origin.  Plaintiff's EEOC charge was sufficient to put the agency on notice of his race and national origin-based hostile work environment claim.  Therefore, plaintiff's hostile work environment claim can be properly considered at this stage. *See Sylla*, 664 F. Supp. 3d at 323 (finding plaintiff's Title VII hostile work environment claim was reasonably related to the allegations in his EEOC charge because it was "based on the racial harassment by [defendant] that plaintiff described in his administrative charge"); *Montanez v. City of New York*, No. 09CV5652 (SJ) (SMG), 2012 U.S. Dist. LEXIS 87149, at *6 (E.D.N.Y. June 22, 2012) (same).

b.    *Prima Facie Case*

Next, Defendants argue that all of Plaintiff's federal and state law hostile work environment claims should be dismissed due to Plaintiff's inability to make out a prima facie case of a hostile work environment.  Motion, ECF 53-1, at 13.  To survive summary judgment on a hostile work environment claim under Section 1981 or the NYSHRL, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015); *accord Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying same standard under NYSHRL); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under . . . Section 1981. . . and the [NYSHRL] is essentially the same.").

"[A] plaintiff who alleges hostile work environment claims must identify sufficient record facts that would allow a jury 'to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse.'"  *Turner v. MTA Metro-N. R.R.*, No. 17-CV-9168 (VSB), 2024 U.S. Dist. LEXIS 47883, at *28–29 (S.D.N.Y. Mar. 19, 2024) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006).  "The objective and subjective components include that 'the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.'"  *Id.* at *29 (quoting *Littlejohn*, 795 F.3d at 321).  "A subjective perception that the work environment was hostile is necessary but not alone sufficient.  Accordingly, the 'mere utterance of an epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the

conditions of employment' so as to create an actionable hostile work environment claim."  *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

A plaintiff must establish that he suffered more than a handful of episodic incidents of harassment in order to prevail on a hostile workplace environment claim.  *Id.* at *29 ("Moreover, a plaintiff must allege that the incidents were 'more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Littlejohn*, 795 F.3d at 321); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("The plaintiff must show more than a few isolated incidents of racial enmity.") (internal quotation marks and alterations omitted).  "Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks omitted).

"However, 'even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace.'"  *Turner*, No. 17-CV-9168 (VSB), 2024 U.S. Dist. LEXIS 47883, at *30 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "[C]onduct not directly targeted at or spoken to an individual but purposefully taking place in his presence can nevertheless transform his work environment into a hostile or abusive one."  *Rasmy v. Marriott Int'l Inc.,* 952 F.3d 379, 389 (2d. Cir. 2020).  "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997) (internal citations and quotation marks omitted).  "Where reasonable jurors could

disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)

Here, Defendants argue that the comments Jaikeran allegedly made to a customer – but not directly to Plaintiff – do not give rise to a legally cognizable hostile work environment. They assert that no reasonable juror could conclude that the comments were motivated by Plaintiff's race or national origin, nor that they created a severe or pervasive condition of employment. Motion, ECF 52-1, at 14. The Court agrees.

Both Defendants Sewell and Jaikeran had supervisory authority over Plaintiff. ECF 52-2, ¶2. Plaintiff testified that Sewell never made any derogatory comments about Plaintiff's race or national origin. Pl.'s Dep., ECF 38-2 at 140:15–22. As to Defendant Jaikeran, Plaintiff points to two isolated comments Jaikeran allegedly made during the course of Plaintiff's employment, which Plaintiff argues raises questions as to the existence of a hostile work environment. First, Jaikeran allegedly told a customer, but not Plaintiff directly, that "[He was] going to fire everyone and hire [his] own people," ECF 45, ¶51. Second, Plaintiff testified that, on another occasion, Jaikeran pointed to Plaintiff and said, "You don't want to work," and "I am only going to hire and promote my people. They work well and we come from the same place," Opposition, ECF 53-1, at 8. Plaintiff argues these comments are explicitly discriminatory and tied to Plaintiff's protected characteristics. *Id.* Therefore, Plaintiff argues, the entire course of conduct is relevant to his hostile work environment claim. *Id.*

However, these isolated statements made no mention of race or national origin on their face and did not take place under circumstances where a discriminatory meaning can be reasonably

13

inferred.  Defendant Sewell, who is African American like Plaintiff, testified that when Plaintiff

told him Jaikeran said he wanted to hire "[his] own people," Sewell interpreted this to mean *people

Jaikeran chose to hire* rather than employees he inherited, which is something many other Store

Managers have said to Sewell when they were having coverage or staffing issues.  Sewell's Dep.,

ECF 40-5 at 118:12–22.  The Court finds this interpretation reasonable.  Defendant Jaikeran did

in fact inherit Plaintiff as an employee.  ECF 45, ¶27, 32, 49.  When Plaintiff began working at

Store 4778 in June 2020, Jaikeran was a PSM and had no authority to hire, fire, demote, promote,

discipline, or write schedules for employees.  ECF 45, ¶28, 30.  But Jaikeran was promoted to

Store Manager in August 2020, ECF 45, ¶49, and between that point in time and Plaintiff's October

2020 complaint to Sewell, Plaintiff had been absent from work for six consecutive weeks.  Ex. I,

ECF 38-10 at AZ-00028–86.  Plaintiff himself admitted that if an employee failed to report to

work, that would complicate AutoZone's business operations.  Pl.'s Dep., ECF 38-2 at 118:8–18.

Accordingly, the Court finds that these alleged, isolated statements by Jaikeran, without

more, are insufficient to establish a hostile work environment claim.  *See Brown v. Montefiore

Med. Ctr.*, No. 19-cv-11474 (ALC), 2024 U.S. Dist. LEXIS 61601, at *23-24 (S.D.N.Y. Mar. 30,

2024) (quoting *Svenningsen v. Coll. of Staten Island*, No. 01-CV-7550, 2003 U.S. Dist. LEXIS

25816, at *2 (E.D.N.Y. Mar. 28, 2003) ("While 'the incidents comprising a hostile work

environment claim need not make reference to any trait or condition on the basis of which the

discrimination has occurred' they must occur under circumstances in which 'the incidents can

reasonably be interpreted as having taken place on the basis of that trait or condition.'"); *see also

Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be sufficient

to establish a hostile work environment claim 'so long as a reasonable fact finder could conclude

that they were, in fact, based on [race]. But this requires some circumstantial or other basis for inferring that incidents [race]-neutral on their face were in fact discriminatory.'").

Here, the Court finds that Jaikeran's comments were facially neutral and finds no circumstantial or other basis for finding that the comments were in fact discriminatory. Moreover, in any event, the comments were not sufficiently severe or pervasice to establish a hostile work environment. *Brown v. Coach Stores*, 163 F.3d 706, 708 (2d. Cir. 1998) (Although plaintiff's allegations that she was "told by her supervisors that Coach 'seeks to hire and promote people who have a 'Coach look' -- the examples to whom her supervisors referred were young non-minority persons" and "one of her supervisors made several discriminatory remarks about minorities" were found to be "despicable and offensive, they fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile work environment."). Although Plaintiff may have found Jaikeran's remarks offensive, the combination of these comments, the allegedly reduced hours, Opposition, ECF 53–1, at 14, and the disciplinary actions linked to chronic absenteeism, *id*; Motion, ECF 52-1, at 1, does not meet the threshold necessary for a juror to conclude a hostile work environment existed based on race or national origin.

c.    *Imputing Liability to Defendants Sewell and AutoZone*

Even if Plaintiff had adequately pleaded a severely or pervasively hostile work environment – and he has not – Plaintiff also needed to establish a basis for imputing liability to Defendants AutoZone and Sewell. *Maiurano v. Cantor Fitzgerald Sec.*, 2021 U.S. Dist. LEXIS 3762, at *13 (S.D.N.Y. Jan. 8, 2021). "If … harassment is perpetrated by a supervisor within the meaning of Title VII, the employer is strictly liable, 'unless the employer is able to establish an affirmative defense showing that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer to avoid harm otherwise.'" *Id.* at \*13-14 (quoting *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015)).

In October 2020, Plaintiff reported to Sewell his frustration that Jaikeran had repeatedly contacted him on October 26, 2020, to confirm his shift attendance, leading Plaintiff to block Jaikeran's calls.  Pl.'s Dep., ECF 38-2 at 144:11-25, 145–146, 147:2–4; Plaintiff's 56.1 Stmt and Revised Counter-Stmt, ¶59.  AutoZone records confirm that Plaintiff was absent on that date, marking the absence as "Unexcused – Failure to Report."  *Id.*, Ex. 11 at AZ-00131.  During the same conversation, Plaintiff relayed a customer's claim that Jaikeran intended to "fire everyone and hire [his] own people."  Sewell, however, did not interpret Jaikeran's statement as racially motivated or constituting harassment.  Sewell's Dep., ECF 40-5 at 118:12–22.

Evaluating these facts, the Court finds no indication that Defendants "knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atl.,* 385 F.3d 210, 225 (2d Cir. 2004).  Plaintiff's allegations do not support that Sewell was, or should have been, aware of discriminatory or harassing conduct by Jaikeran. Instead, they suggest Jaikeran's actions were motivated by Plaintiff's consistent absenteeism, acknowledged by both parties to adversely affect staffing and customer service.  ECF 45, ¶18. Thus, Plaintiff has failed to plead sufficient facts supporting a basis for Defendants AutoZone and Sewell to be held liable for Jaikeran's alleged discriminatory conduct.

Accordingly, the Court finds Plaintiff's Title VII and NYSHRL hostile work environment claims fail as a matter of law, and summary judgment with respect to these claims is granted.

### 2. Discrimination

 "Under Title VII and the NYSHRL, discrimination claims based on race, color, religion, and national origin are analyzed under the familiar three-step burden-shifting framework

established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Espinoza v. N.Y.C. DOT*, 304 F. Supp. 3d 374, 387 (S.D.N.Y. 2018). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (stating that Title VII and NYSHRL claims are governed by the *McDonnell Douglas* standard); *Ruiz v. Cty. of Rockland*, 609 F.3d. 486, 491 (2d Cir. 2010) (same for Section 1981 claims).

Under the *McDonnell Douglas* burden-shifting framework "a plaintiff must first establish a prima facie case of Title VII discrimination 'by showing that: (1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Cruz v. 32BJ SEIU*, No. 22-2753, 2024 U.S. App. LEXIS 3836, at *3 (2d Cir. Feb. 20, 2024) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). "Once the plaintiff establishes a prima facie case, the burden shifts to the [employer] to offer 'some legitimate, nondiscriminatory reason' for the differing treatment." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the [employer] offers such a reason for its actions, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual, or that race discrimination was still a motivating factor of the [employer]'s decision." *Id.* (citing *Holcomb v. Iona College*, 521 F.3d 130, 141-42 (2d Cir. 2008)).

Plaintiff's complaint must provide the "bits and pieces of information" necessary "to support an inference of discrimination, i.e., a mosaic of intentional discrimination[.]" *Id.* at 86 (internal quotation marks and citation omitted). "[A]bsent direct evidence of discrimination," each part of the four-part test laid out in *Vega* "must be plausibly supported by facts alleged in the complaint[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff must adequately allege that his protected characteristic "was a motivating factor in [defendant's] decision to" terminate him. *Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 8 (2d Cir. 2021). The

17

standard under the NYCHRL requires a plaintiff must plead "that []he is treated 'less well'– because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

    a.    Protected Class

The parties do not dispute that "Plaintiff is an African American man and is therefore a member of a protected class under Title VII, § 1981, and the NYSHRL." *Dingle v. Riverbay Corp.*, No. 21-CV-01349 (ALC) (JLC), 2024 U.S. Dist. LEXIS 57550, at *14 (S.D.N.Y. Mar. 29, 2024).

    b.    Qualified

As to the second element, "to establish qualification, 'all that is required is that the plaintiff establish basic eligibility for the position at issue.'" *Id.* (quoting *Kaboggozamusoke v. Rye Town Hilton Hotel*, 370 Fed. App'x. 246, 248 n.1 (2d Cir. 2010)). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (alteration, citations and internal quotation marks omitted). "However, a trail of negative performance reviews can serve as evidence that a plaintiff is not qualified for his position." *Weber v. City of N.Y.*, 973 F. Supp. 2d 227, 253 (E.D.N.Y. 2013) (collecting cases). "A plaintiff cannot establish that he performed his duties satisfactorily when defendant 'offered a trail of performance reviews and improvement plans that document plaintiff's deteriorating performance.'" *Dingle*, 2024 U.S. Dist. LEXIS 57550, at *14 (quoting *Bailey v. Frederick Goldman, Inc.*, No. 02 CIV 2429 (TPG), 2006 WL 738435, at *3 (S.D.N.Y. Mar. 23, 2006)). "Where, as here, an employer presents evidence of unsatisfactory work performance as a legitimate reason for an adverse employment action, a plaintiff must rebut those reasons to survive a summary judgment motion." *Rivera v. Greater Hudson Valley Health Sys. (Now Known as Garnet Health)*, No. 21-CV-1324 (NSR), 2023 WL

18

2588308, at *11 (S.D.N.Y. Mar. 21, 2023) (citing *Wheeler v. Corp. Couns. of N.Y.C.*, No. 93 CIV. 5184 (NRB), 2000 WL 1760947, at *5 (S.D.N.Y. Nov. 30, 2000), aff'd, 28 F. App'x 90 (2d Cir. 2002)).

The parties disagree as to whether Plaintiff was qualified for his position. Plaintiff asserts that there is a question of fact regarding whether he was qualified, pointing out that Defendants believed he was qualified initially when they hired him for the position. Opposition, ECF 53-1, at 13–14. Conversely, Defendants argue that Plaintiff cannot be considered qualified due to his chronic attendance issues, which they assert adversely affected both customer service and other employees. Motion, ECF 52-1, at 19.

Defendants have offered a trail of negative performance reviews as evidence of Plaintiff's unsatisfactory work performance. AutoZone's business records show that Plaintiff accumulated twenty-four occurrence points – twice the allowable limit under AutoZone's attendance policy – due to his absences on January 11, 12, 13, and 15, 2020. Plaintiff's 56.1 Stmt and Revised Counter-Stmt, Ex. 11 at AZ-00131; Callejas' Dep., ECF 38-5 at 103:22–104:1. Plaintiff further testified that on January 9, he informed Jaikeran about his upcoming surgery and the need to self-quarantine beforehand, which would require him to be absent from work to prevent contracting Covid-19. *Id.* at 211:24–212:20. Plaintiff alleges that Jaikeran responded by laughing and saying, "Okay." *Id.* at 216:22. Despite conveying this information to Jaikeran, Plaintiff also testified that he expected Jaikeran to "[s]till put [him] on the schedule" after January 9, 2020 *Id.* at 215:15. At his deposition, when Plaintiff was questioned about whether he had informed Jaikeran that he would not be returning to work after January 9, Plaintiff answered, "No, I did not tell him anything like that." Pl.'s Dep., ECF 38-2 at 216:24–217:4. Furthermore, AutoZone records show that during four weeks in July and August 2020, Plaintiff was scheduled for thirty-seven to forty hours per

week, yet he did not report to work at all during these periods.  Ex. I, ECF 38-10 at AZ-0060–69.

When questioned on the reason for his no-calls and no-shows on those dates, Plaintiff stated that

he was "not exactly sure" why he failed to report to work during those weeks.  Pl.'s Dep., ECF 38-

2 at 183:5–16.

AutoZone's attendance policy explicitly states that failure to report for two consecutive

shifts without notifying a manager constitutes job abandonment.  ECF 45, ¶22.  Here, Defendants

have presented substantial evidence of Plaintiff's unsatisfactory work performance, culminating

in what they characterize as job abandonment after repeated missed shifts.  Plaintiff's own

testimony, wherein he confirmed that he expected to be scheduled for shifts after January 9 and

did not inform Jaikeran of his unavailability following January 9, confirms this characterization.

Such pattern of non-attendance provides a legitimate basis for Plaintiff's termination.  "Because

Plaintiff fails to point to evidence on the record . . . contradicting the documentary evidence on the

record, the Court finds that Plaintiff has not adequately rebutted Defendant[s'] arguments that he

was [not] qualified for his position."  *Rivera*, 2023 WL 2588308, at \*11.

Although Plaintiff has not succeeded in proving one of the requisite elements necessary to

establish a prima facie case of discrimination on the basis of race or national origin, the Court will

nevertheless proceed to examine whether the Plaintiff has satisfactorily established the other

essential elements of the claim.

### c.    *Adverse Employment Action*

"The category of employment decisions that constitute adverse actions is 'broad' in scope."

*Banks v. GM, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Treglia v. Town of Manlius*, 313 F.3d

713, 720 (2d Cir. 2002)).  "Examples of adverse employment actions include 'termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

For the purposes of this motion, the Court will accept the contention that Plaintiff suffered an adverse employment action when he was terminated from his job, either in retaliation for engaging in a protected activity, or because he belonged to a protected class.  Opposition, ECF 53-1, at 14.  *See Dingle*, No. 21-CV-01349 (ALC) (JLC), 2024 U.S. Dist. LEXIS 57550, at *16 (accepting plaintiff's contention that he suffered an adverse employment action when he was terminated even though plaintiff failed to establish the second and final prongs of a prima facie case of discrimination on the basis of race or national origin).

### d.    *Circumstances Giving Rise to an Inference of Discrimination*

"A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees of other races or national origins." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  "When relying on evidence of disparate treatment, a plaintiff must show he was 'similarly situated in all material respects to the individuals with whom [ ]he seeks to compare [him]self.'" *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 209 (E.D.N.Y. 2017) (quoting *Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003)).  "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493-94 (internal quotations omitted).

Here, Plaintiff asserts that "Defendants applied their more lenient COVID attendance policy to other employees, [but] did not apply it to Plaintiff."  ECF 52-2, ¶ 20.  However, the evidence suggests otherwise.  Although AutoZone announced a temporary suspension of

disciplinary actions for attendance during the pandemic, with points still being recorded, ECF 45, ¶ 23-24; Ex. 14, ECF 40-16 at AZ-00381, the record shows that in July 2020 – while the policy was ostensibly still in effect – AutoZone disciplined other employees, such as Anthony Ramroop and Terry James, for attendance violations. Ex. F, ECF 38-2 at AZ-00975; Ex. H, ECF 38-9 at AZ-00974. Furthermore, AutoZone did not revert to its standard attendance policy until at least September 27, 2020. Ex. 14, ECF 40-16 at AZ-00381. Despite Plaintiff not showing up for scheduled shifts totaling thirty-seven to forty hours per week during July and August, his first written warning for attendance did not occur until November 16, 2020, after he had accrued eight additional attendance points between September 27 and November 16, 2020. Ex. I, ECF 38-10 at AZ-0060–69; ECF 45, ¶66. This timeline indicates that Defendants did apply their more lenient Covid-19 policy to Plaintiff, contrary to his claims.

Additionally, Plaintiff alleges that Jaikeran, upon becoming Store Manager, favored employees of Guyanese descent over Plaintiff, who is not Guyanese. ECF 52-2, ¶5. Plaintiff offers no documentary evidence to support this claim. In contrast, Jaikeran testified that he was unaware of any other Guyanese employees at the store besides himself, Jaikeran's Dep., ECF 38-6 at 74:9–23, and company records corroborate that only Jaikeran identified as Guyanese during the relevant period. Ex. 19, ECF 40-21 at AZ-00966. The parties do not dispute that numerous employees, irrespective of race, were disciplined for attendance violations in late 2020. ECF 45, ¶69. Callejas' testimony further indicates that those disciplined were of various races and had not reported discrimination or harassment. ECF 45, ¶70. This evidence contradicts Plaintiff's assertion that his termination for alleged job abandonment was a pretext for discrimination. Opposition, ECF 53-1, at 17–19. Plaintiff has not provided evidence of another similarly situated non-African-American employee who amassed in a similar number of attendance violations but

did not face discipline or was treated more favorably than Plaintiff was.  This lack of evidence weakens Plaintiff's claim that his termination took places under circumstances giving rise to an inference of discrimination.

Finally, it is an undisputed fact that Regional Manager Hamilton, who decided to terminate Plaintiff and who is also African American, was unaware of Plaintiff's race or national origin at the time of her termination decision, and unaware of any complaints of harassment or discrimination purportedly made by Plaintiff.  ECF 45, ¶87.  Callejas, the person who recommended Plaintiff's discharge, stated that the decision was based on Plaintiff's repeated failures to report for work in January 2021, leading to the accumulation of twenty-four attendance points.  Callejas' Dep., ECF 38-5 at 103:7–104:7.  Under AutoZone's attendance policy, failure to report for two consecutive shifts without notifying a manager constitutes job abandonment.  ECF 45, ¶22.  Callejas further testified that he has recommended the discharge of many other employees, across various races and ethnicities, for similar violations of the attendance policy.  *Id.* at 103:7–104:7, 104:19–24.  The decision to terminate Plaintiff was thus based on his job abandonment, confirmed by the significant number of attendance points he accrued.

Additionally, Regional Manager Hamilton declared that she has made similar decisions to discharge hundreds of individuals for job abandonment, without knowledge of their races or national origins, "Hamilton Decl.", ECF 38-4, ¶9, which underscores the non-discriminatory nature of AutoZone's disciplinary practices and supports the legitimacy of the decision regarding Plaintiff's termination.

When examining the totality of the circumstances, the Court finds that Plaintiff has not shown that his termination was motivated by discrimination.  "Because Plaintiff has not met his burden to establish a prima facie case of discrimination, the Court need not reach further analysis

under the *McDonnell Douglas* test." *Dingle*, No. 21-CV-01349 (ALC) (JLC), 2024 U.S. Dist. LEXIS 57550, at *20-21.

Thus, Plaintiff has failed to plead facts necessary to support his discrimination claims under Title VII, § 1981 and NYSHRL, and summary judgment with respect to these claims is granted.

### 3.     Retaliation

Defendants challenge Plaintiff's retaliation claims, arguing that he cannot establish a prima facie case due to a lack of evidence that Regional Manager Hamilton was aware of any protected activity by Plaintiff.  Motion, ECF 52-1, at 21–22.  "Retaliation claims under Title VII and the NYSHRL, like discrimination claims, are analyzed under the *McDonnell Douglas* burden-shifting framework." *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544-cv, 2021 U.S. App. LEXIS 27084, at *7-8 (2d Cir. Sep. 9, 2021).  "To state a prima facie claim for retaliation under Title VII, §1981, and the NYSHRL, a plaintiff must demonstrate that: (1) he participated in a protected activity; (2) the defendant was aware of his protected activity; (3) he suffered an "adverse employment action;" and (4) there is a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

A causal connection is established "by showing that the protected activity was followed closely by the discriminatory treatment." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks and citations omitted).  "An employee engaged in a 'protected activity' 'need not establish that the conduct he opposed was in fact a violation of Title VII, but rather, only that he had a good faith, reasonable belief that the underlying employment practice was unlawful.'" *Dingle*, No. 21-CV-01349 (ALC) (JLC), 2024 U.S. Dist. LEXIS 57550, at *21 (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). "A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if

24

'nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" *Moore v. City of N.Y.*, 745 F. App'x 407, 409 (2d Cir. 2018) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

Defendants argue that Plaintiff did not effectively communicate any discrimination complaints to Sewell in October 2020 because Plaintiff's statement to Sewell lacked sufficient detail that would have permitted Sewell to believe Jaikeran was discriminating against Plaintiff on the basis of race or national origin. *See* Motion, ECF 52-1, at 21–22. Sewell interpreted Plaintiff's remarks – that Jaikeran had expressed a desire to "fire everyone and hire [his] own people," ECF 45, ¶51 – as a wish to select his own team rather than a declaration of intent to discriminate. This interpretation is consistent with comments Sewell noted from other Store Managers who faced similar staffing issues. Sewell's Dep., ECF 40-5 at 118:12–22. Plaintiff's broad statement to Sewell was too vague for a fact-finder to decide Plaintiff was retaliated against for his statement.

Even if Plaintiff's statement qualified as a protected activity, it lacks a causal connection to any adverse employment action. Plaintiff contends that his termination was a retaliatory act disguised by a purportedly legitimate, non-discriminatory reason – his alleged job abandonment. Opposition, ECF 53-1, at 23. However, the decision to terminate Plaintiff's employment was made by Regional Manager Hamilton, who, at the time, was reportedly unaware of any discrimination complaints lodged by Plaintiff. ECF 45, ¶87. Given that Plaintiff cannot establish a causal connection between his termination and any alleged protected activity, he cannot establish a claim of retaliation under any statute.

Accordingly, Plaintiff's retaliation claims under Title VII, §1981, and the NYSHRL are dismissed for failure to allege a protected activity, or a connection to an adverse employment action.

### 4.      State Law Aiding and Abetting Claims

Plaintiff argues Defendant Sewell aided and abetted the alleged discrimination against Plaintiff under § 296(6) of the NYSHRL, and the NYCHRL.  Opposition, ECF 53-1, at 24–25. However, because Plaintiff cannot establish any hostile work environment, discrimination, or retaliation claims against the Defendants, he cannot maintain an aiding and abetting claim against any Defendant.  Thus, those claims must be dismissed.  *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 625 (E.D.N.Y. 2020) ("Because the court now dismisses all of Plaintiff's other claims under NYSHRL, there was no forbidden act to aid or abet and Defendants are entitled to summary judgment on this claim.").

### B.      Plaintiff's Remaining Claims

Lastly, Plaintiff asserts claims of a hostile work environment, discrimination, and retaliation under the less stringent NYCHRL.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Here, in its discretion, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**CONCLUSION**

For the reasons set forth, Defendant's motion to for summary judgment is hereby GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendants, dismiss Plaintiff's Complaint in its entirety, and close this case.

SO ORDERED

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

Dated:  July 12, 2024
          Brooklyn, New York

27